Charles E. SHELLEY, et al.,
Appellants,

v.

William E. BROCK, Secretary of
Labor, et al.

No. 85–5719.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 25, 1986.

Decided June 27, 1986.

John J. Witmeyer, III, New York City, for appellants.

Michael J. Ryan, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees, William E. Brock, Secretary of Labor, et al.

Joseph A. Yablonski, with whom Daniel B. Edelman and Joseph Guerrieri, Jr. Washington, D.C., were on brief, for appellees, Broth. of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO.

Before WALD, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case concerns the Labor-Management Reporting & Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.* (Act, LMRDA or Landrum-Griffin Act). The Act, among other things, was designed to assure democracy in union affairs. It prescribes certain substantive and procedural rules with which union elections must comply. The Act vests the Secretary of Labor with exclusive authority to bring suit to set aside invalid union elections. Here, after a contested union election, members of the Brotherhood of Railway, Airline, & Steamship Clerks, Freight Handlers, Express & Station Employees (BRAC) filed a complaint with the Secretary. The Secretary declined to bring suit to set aside the election. *See* Secretary of Labor, Statement of Reasons for Denying the Complaints of Charles E. Shelley, Robert J. Devlin and J.J. Witmeyer Regarding the Election Conducted by [BRAC] ("First Statement"); Secretary of Labor, Statement of Reasons for Dismissing the Complaints of Charles E. Shelley, Robert J. Devlin and J.J. Witmeyer Concerning the Election Conducted by [BRAC] ("Second Statement"). BRAC members then sought a writ of mandamus in the district court to compel the Secretary to sue. The district court found the Secretary's decision not to sue was neither arbitrary nor capricious and refused to issue the writ. *See Shelley v. Donovan,* No. 84-2454, mem. op. (D.D.C. May 13, 1985) (appellee Brock has been substituted for former Secretary Donovan). Because we find that the Secretary did not adequately explain his decision not to bring suit, we reverse the district court with instructions to remand the matter to the Secretary for further consideration.

## I.

The LMRDA was designed to put an end to "shocking abuses" in the process by which labor unions govern themselves, S.Rep. No. 86–187, 86th Cong., 1st Sess. 5 (1959), U.S.Code Cong & Admin.News 1959, p. 2318; *Donovan v. Local 6, Washington Teachers' Union,* 747 F.2d 711, 713 (D.C.Cir.1984), and ensure "internal union democracy." S.Rep. No. 86–187 at 6, U.S. Code Cong & Admin.News 1959, at p. 2322.

Subsequent to an election, any union member who has exhausted internal remedies may file a complaint with the Secretary of Labor. [29 U.S.C.] § 482(a). Following a mandatory investigation, the Secretary, if he finds probable cause to believe that a violation has occurred and that it has not been remedied, comes under a statutory obligation to bring a civil action against the union in federal court to set aside the election. If, after trial, the court finds ... that the election did not comply with the LMRDA and that any violation "may have affected the outcome of the election," the court "shall" declare the election void and direct the Secretary to conduct a new election under his supervision. *Id.* § 482(c).

*Donovan v. Local 6,* 747 F.2d at 714.

BRAC held an election in 1983. Just before the election took place, a split developed in the union's leadership and an insurgent slate emerged. Nevertheless, the in-

cumbent president and his slate won. Plaintiffs, members of BRAC, believe that improprieties occurred during the election. Plaintiffs have three principal complaints about the conduct of BRAC's election. *See* Complaint, *Shelley v. Donovan*, No. 84–2454, mem. op. (D.D.C. May 13, 1985).

First, plaintiffs believe that the treatment of retired union members during the election was improper. BRAC's elections are run in a way similar to political conventions. Locals and other union units select delegates to attend the union's convention. These delegates, in turn, participate in the election of union officers at the convention. Retired members, although they retain their local affiliation, were not allowed to participate in the selection of their local's convention delegate. Despite this, the union calculated the voting weight to be assigned each local at the convention based on the local's roster of both active members and retirees. Plaintiffs claim that these two practices were improper and violated the Act.

Second, to enable union locals with only a small number of members to vote at the convention, BRAC "assigned" members to those locals. These shifts gave smaller locals the 150 members that BRAC rules require for convention representation. *See* First Statement at 2–3. Plaintiffs believe that this practice was improper. Third, plaintiffs alleged that the incumbent slate improperly used union funds and facilities in aid of its election campaign.

Based on these allegations, plaintiffs unsuccessfully protested the result of the election to the Union's Executive Council. Subsequently, pursuant to section 402 of the LMRDA, 29 U.S.C. § 482, plaintiffs filed a complaint with the Secretary of Labor. The Secretary of Labor investigated the plaintiffs' allegations, but declined to bring a civil action to set aside the election. *See* First Statement; Second Statement. After the Secretary's decision not to sue the union, plaintiffs sought a writ of mandamus in the district court to compel the Secretary to sue. The district court determined, however, that the Secretary's deci-

sion not to sue was proper and granted summary judgment to Secretary Brock. *See Shelley v. Donovan, supra.* This appeal followed.

## II.

■ The standard by which the courts are to review the Secretary of Labor's decisions under the LMRDA is quite deferential. In *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), the Court explained that in enacting section 482,

> Congress "decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest ... [and] decided not to permit individuals to block or delay union elections by filing federal-court suits...." ... "Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted...."

*Id.* at 568–69, 95 S.Ct. at 1858–59 (citations omitted).

The Court noted that "the statute relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect." *Id.* at 571, 95 S.Ct. at 1860. The Court held that "to enable the reviewing court intelligently to review the Secretary's determination, the Secretary must provide the court and the complaining witness with copies of a statement of reasons supporting his determination." *Id.* at 571, 95 S.Ct. at 1860. Only when the statement of reasons offered by the Secretary, *"without more,* evinces that [his] decision is so irrational as to constitute the decision arbitrary and capricious" is it appropriate to consider overriding the Secretary's decision. *Id.* at 573, 95 S.Ct. at 1860 (emphasis added). Thus, "[e]xcept in what must be the rare case," the reviewing court may consider only the statement of reasons itself. *Id.* at 572, 95 S.Ct. at 1860. " 'If ...

the Court concludes ... there is a rational and defensible basis [stated in the reasons statement] for [the Secretary's] determination, then that should be an end of this matter, for it is not the function of the Court to determine whether or not the case should be brought or what its outcome would be.'" *Id.* at 573, 95 S.Ct. at 1860 (*quoting DeVito v. Shultz,* 72 L.R.R.M. (BNA) 2682, 2683 (D.D.C.1969)).

■ The Court also made clear that although § 482 by its terms only leaves the Secretary discretion to determine if a violation has taken place, the Secretary is also impliedly given discretion to decline to bring suit if he does not believe the violation "'probably infected the challenged election.'" *Id.* at 570, 95 S.Ct. at 1859 (*quoting Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 472, 88 S.Ct. 643, 648, 19 L.Ed.2d 705 (1968)). However, despite the narrowness of review under § 482, the Court made clear that *some* review is appropriate and that "there is no merit in the Secretary's contention that his decision is an unreviewable exercise of prosecutorial discretion." *Id.* at 567 n. 7, 95 S.Ct. at 1858 n. 7.

Although the district court here cited *Dunlop,* it also stated that "the Secretary has broad prosecutorial discretion, subject to only limited judicial review, in deciding whether to act on a union members' complaint." This was error. The Secretary's discretion is broad, but it cannot be equated with the prosecutorial discretion of a United States Attorney; the Secretary must justify the exercise of his discretion by specific reference to the terms of the authority vested in him by the Act. While we disagree with the district court's conclusion that the Secretary's action was adequately justified, the tenor of its review was in fact correct. We wish only to clarify that the appropriate standard, and, as far as we can tell, the standard applied here, is less deferential than that of prosecutorial discretion.

■ It should also be noted that no tension exists here with the Supreme Court's recognition that certain enforcement decisions are not subject to judicial review. In *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Court said the following about *Dunlop:*

> *Dunlop* is thus consistent with a general presumption of unreviewability of decisions not to enforce. The statute being administered [in *Dunlop* ] quite clearly withdrew discretion from the agency and provided guidelines for exercise of its enforcement power.

*Id.* 105 S.Ct. at 1657. Thus, *Dunlop* and *Heckler* establish that review of the Secretary's decision under the LMRDA is not barred by the Administrative Procedure Act. 5 U.S.C. § 701(a)(2). Finally, we note that "when a legal challenge focuses on an announcement of a substantive statutory interpretation, courts are emphatically qualified to decide whether an agency has acted outside of the bounds of reason." *International Union, United Automobile Workers v. Brock,* 783 F.2d 237, 245 (D.C. Cir.1986).

We turn now to an examination of the Secretary's decision not to sue and the district court's ratification of that decision.

### III.

#### A.

With respect to the transfer of union members, the Secretary said the following:

> Because of the possibilities for abuse inherent in such a procedure, this matter constitutes the most serious of the investigative findings of the Secretary of Labor concerning the subject election, and the Secretary of Labor does not condone this practice of transferring members for this purpose. However, upon careful consideration of the equities and all of the circumstances ..., it is determined that the Secretary of Labor on this occasion should exercise his discretion to decline to bring an action under section 402 of the Act to set aside the subject election.
>
> The following are factors taken into consideration ...[:] The transfer of members in this instance appears to have

been in accordance with past practice of long standing in BRAC. The investigation disclosed insufficient evidence to support the conclusion that the transfers of members were carried out for the purpose of manipulating the election to the disadvantage of the opposition candidates....

Also weighed in the balance to determine whether it would be appropriate to bring an enforcement action in this instance is the fact that the union has acknowledged the possibility that the practice ... is subject to abuse. The union has indicated a willingness to take steps to avoid any further use of these procedures.

First Statement at 3–4. The Secretary went on to note that prosecuting this action would be difficult and involve a "very significant expenditure of the finite resources of the Department...." *Id.* at 4.

■ We find the Secretary's statement inadequate. Although the Secretary says that he "does not condone" the member-shifting that plaintiffs complain of, he does not say whether the LMRDA was violated. The Secretary is not charged with announcing his feelings about union elections. Rather, the Secretary is obligated to examine union elections and determine if they fall foul of the Act's dictates. On remand the Secretary must do that with respect to this election.

■ If the Secretary should conclude that this election did not comply with the LMRDA, he would then have discretion to decline to bring suit if, in his expert opinion, the violations involved did not "probably infect[ ] the challenged election." *See Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 472, 88 S.Ct. 643, 649, 19 L.Ed.2d 705 (1968); *Dunlop v. Bachowski, supra.* The Secretary's current statement is inadequate in this regard as well. We cannot say with confidence that the Secretary in fact applied the statutory standard to his determination. The Secretary's statements deal more with the complications of setting aside an election than with Congress' command to insure trade-union

democracy. Should the Secretary find that the challenged practices were improper, his conclusion as to whether they infected the election must be clearly stated. The hodge-podge of considerations listed by the Secretary simply do not allow us to conduct even the deferential review that the Act requires. In administering the LMRDA, " 'it is necessary ... to delineate and make explicit the basis upon which disciplinary action is taken, particularly in a case ... where the decision taken consists of a failure to act after the finding of union election irregularities.' " *Dunlop v. Bachowski,* 421 U.S. at 571–72, 95 S.Ct. at 1860 (*quoting DeVito v. Shultz,* 300 F.Supp. 381, 383 (D.D.C.1969)). Should the Secretary find a violation but decide not to bring suit, he must provide an explanation for his decision that is both clear and founded on grounds permitted by the statute or the case law.

### B.

■ Because plaintiffs make an erroneous argument about the scope of the Secretary's discretion not to sue, we pause to clarify the nature and extent of that discretion. If the Secretary does elect to sue under the LMRDA, the Act specifies that if a violation "may have affected the outcome of an election," the court will set aside the election. *See* 29 U.S.C. § 482(c)(2). The plaintiffs assert that this section of the statute has a precise and mathematical meaning. They claim that if the total number of infected votes, if they were shifted to the election's loser, would be enough to change the election's outcome, then the election must be set aside by a court. That is, when the Secretary does sue to set aside an election, plaintiffs believe the election must be set aside if there is a statistical possibility a new election would yield a different result. Plaintiffs analogize that the Secretary must apply a similar mathematical standard in exercising the discretion granted him by *Wirtz v. Bottle Blowers* and *Dunlop v. Bachowski* to sue only when he believes the violation affected the election's outcome. That is, plaintiffs ar-

gue that the Secretary must sue if the number of tainted votes would have been enough to swing the election. We disagree.

Plaintiffs cite *Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), for support. In that case the Court held that "a proved violation of § 401 [of the LMRDA has] the effect of establishing a prima facie case that the violation 'may have affected' the outcome." *Id.* at 506–07, 88 S.Ct. at 1752. Plaintiffs assert that when the number of votes affected would have been enough to swing the election, the prima facie case becomes irrebuttable. We need not decide whether the plaintiffs' argument is correct in the context of an actual suit under the LMRDA. We hold, however, that plaintiffs are incorrect to extend their reasoning to the Secretary's decision whether to bring suit. The discretion given the Secretary by *Wirtz v. Bottle Blowers* and *Dunlop v. Bachowski* to bring suit only when he believes the alleged violation "probably infected the challenged election" would amount to little if he were allowed only to ascertain the number of potentially affected votes and determine whether, if all recast for the loser, the election's outcome might have been different.

The senseless consequences of plaintiffs' contentions are easily illustrated. Suppose a union violates the LMRDA by conducting an election five years and a day after the next previous election, but that in all other respects the election was proper and in compliance with the Act. *See* 29 U.S.C. § 481(a). Or suppose that a union constitution required all election ballots to be printed on yellow paper, but through an inadvertent error, all the ballots were printed on pink paper. This would be a violation of the Act. *See* 29 U.S.C. § 481(f). In both of these hypothetical cases, all the votes cast would be tainted and challenged; if they were recast the election's outcome might be changed. It would be ludicrous, however, to require the Secretary to sue to set aside the election in these cases. Noth-

ing in precedent or policy suggests that the Secretary's discretion not to sue does not extend to circumstances where a technical violation has occurred, but he has no reason to believe that the election's outcome was affected. *See Wirtz v. Bottle Blowers,* 463 U.S. at 473–74, 88 S.Ct. at 649–50; *cf. Donovan v. Local 6, Washington Teachers' Union,* 747 F.2d at 719 ("perfunctory and cryptic suggestion that such interference could not have affected the election's outcome" inadequate to justify Secretary's decision not to sue).

#### C.

■■■■ As the Secretary reconsiders this matter, we think it important to make clear that some of the "factors" relied on by him in his decision not to sue here are clearly improper. The Secretary's consideration of the limited resources available to him, for instance, is entirely inappropriate. We are aware of the difficulty the executive branch may have in allocating its scarce resources to the many tasks it is called on to perform. However, Congress has directed the Secretary that he may not decline to bring suit unless he finds either that there was no violation of the statute or that the violation in question did not infect the challenged election. Notwithstanding budgetary exigencies, the Secretary does not have the same discretion to decline to seek the statutory remedies under the LMRDA that a prosecuting attorney has under the criminal laws. Similarly, a promise by the union that it will not repeat any violations does not suffice under the Act to excuse the Secretary from his duty to sue.

#### D.

■■■■ Despite the inadequacy of the Secretary's statement, we have little difficulty in affirming the district court's conclusion that a writ of mandamus is inappropriate. *Dunlop v. Bachowski* makes clear that "[w]here the [Secretary's] statement inadequately discloses his reasons, the Secretary

may be afforded opportunity to supplement his statement." 421 U.S. at 574, 95 S.Ct. at. *Dunlop* is explicit that only in the exceptional case *might* it be appropriate for a court to order the Secretary to sue. However, whether a court in fact has this power was left undecided by *Dunlop. See id.* at 574–76, 95 S.Ct. at 1861–62. In any event, there is no cause to resolve this question here. With respect to BRAC's member-shifting, the Secretary should be given another opportunity to apply the statutory standards rather than his personal balancing test and decide whether to sue.

## IV.

 As noted above, the plaintiffs also argue that the Secretary was wrong to conclude that it was permissible under the Act to exclude retirees from representation in the union elections. *See* Second Statement at 1. The plaintiffs further argue that even if the exclusion of retirees from the selection of delegates was proper, it was wrong to nonetheless count their membership in the union's locals for the purpose of weighting the delegates' votes. *See* First Statement at 2.

The Secretary based his conclusion that retirees were not improperly excluded from the union election on 29 C.F.R. § 452.93, a Labor Department regulation interpreting the LMRDA. *See* Second Statement at 1; First Statement at 2. Section 452.93 states that it is permissible for unions to restrict the right of retirees to vote. In other words, the section provides that excluding retirees from union elections does not violate the Act's command that "[e]very member of a labor organization shall have equal rights ... to vote in elections ... subject to reasonable rules and regulations...." 29 U.S.C. § 411.

In light of the special deference accorded the Secretary in this area by *Dunlop v. Bachowski,* and the general principles of deference to agency interpretations of ambiguous statutes announced by the Supreme Court in *Chevron, U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we do not believe that § 452.93 is an impermissible interpretation of the Act. The standard laid out in § 411 is flexible and calls for the exercise of judgment and expertise. While we do not think that any interpretive regulation the Secretary might promulgate that dealt with § 411 would necessarily be proper, the regulation here is reasonable. The Supreme Court has recognized that retirees are not "employees" for all labor law purposes. *See Allied Chemical & Alkali Workers of America, Local 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 164–71, 92 S.Ct. 383, 389–93, 30 L.Ed.2d 341 (1971). The primary purpose of a union is the representation of employees. Allowing unions to exclude non-employee members from elections can be perfectly sensible and proper.

The supposedly analogous cases cited by the plaintiffs do not support the conclusions that retirees, a class that has interests quite different from those of working union members, may not be accorded lesser status in union elections. The examples cited by the plaintiffs are instances where union members whose substantive positions within the union were identical were improperly disenfranchised by essentially procedural requirements. For instance, in *Local 3489, United Steelworkers of America v. Usery,* 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), the Court reviewed the Secretary's challenge to a union meeting-attendance rule that disqualified 96.5% of a local's members from holding union office. The Court held that the rule violated the LMRDA. Similarly, in *Wirtz v. Hotel, Motel & Club Employees Union, supra,* the Court held that a union rule limiting eligibility for certain elective offices to union members who had previously held elective office violated the LMRDA. Even a cursory examination of these cases demonstrates how far removed they are from the practice challenged here. Moreover, in both cases the Court *agreed* with the Secretary that a union rule restricting eligibility for

elective office was improper under the LMRDA. Given the Secretary's status as primary arbiter of the Act's meaning, such a decision is quite different from invalidating the Secretary's interpretation of the Act under the facts of this case.

█ The Secretary further concluded that it was proper to count retired members of each local "as part of the local membership for purposes of determining the local's delegate representation at the Convention." First Statement at 2. We agree that this conclusion was also reasonable and adequately explained.

In announcing his conclusion, the Secretary said that

Under the specific circumstances of this case, the inclusion of retirees as part of each local's membership for th[e] purpose [of vote weighting] does not appear to constitute a violation of the Act. The BRAC retirees pay dues and otherwise are considered members in good standing. The Department of Labor has consistently taken the position that unions may restrict the right of retired members to vote in union elections. *See* 29 C.F.R. § 452.93. However, the Act does not limit the representation of the interests of such members by the delegates from their locals where retired members do not have the right to vote, and therefore the union may choose to count retired members for purposes of determining delegation representation. Furthermore, the Supreme Court has pointed out that in prescribing the provisions of Title IV for the Act, Congress' model of democratic elections was political elections in this country. *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 502, 88 S.Ct. 1743, 1749, 20 L.Ed.2d 763 (1968). In this regard, it may be noted that for purposes of determining apportionment of members of the United States House of Representatives, persons in addition to registered voters are counted.... *See also, Sharron v. Brown*, 447 F.2d 94 (2d Cir.1971), *cert.*

*denied*, 405 U.S. 96[8], 92 S.Ct. 1511, 31 L.Ed.2d 243.

*Id.*

While the arrangement used by BRAC for including retirees in its elections may not be perfect, the Secretary's statement adequately explains why it is a permissible accommodation of the retirees' diminished but not non-existent interest in union affairs.

## V.

█ Finally, we address plaintiffs' complaint about the expenditure of union funds and resources for electioneering by the incumbent slate. *See* First Statement at 1–2. The Secretary found "similar violations of [the Act] by the opposition slate.... As a result of widespread violations of ... the Act ... by both slates, the Department is unable to conclude that the violations had any actual effect on the outcome of the election." *Id.* The Secretary's determination was a reasonable exercise of the expert discretion entrusted to him. We note, however, that the Secretary's statement bordered on the incorrect when it stated that "the Department is unable to conclude that the violations had any actual effect on the outcome of the election." *Id.* at 2. Given the nature of the discretion entrusted to the Secretary by *Dunlop v. Bachowski* it would be far better to conclude explicitly that a violation probably *did not* have an effect on the election than to assert that no conclusion is possible. The statement here, however, read as a whole, indicates that the Secretary did not believe that the violations affected the election's outcome, however inelegant his prose.

\* · \* \* \* \* \*

Congress struggled hard to find an appropriate balance between the protection of union members' electoral rights and the avoidance of court supervision of the electoral process. It fashioned a statute that gives the Secretary broad, but not unbridled, discretion to review trade union elections to determine their conformity to statutory and democratic principles. While the

Secretary is the primary umpire, however, Congress did not put his decisions beyond review and necessity of explanation.

Despite the substantial deference that is due the Secretary's determinations under the LMRDA, his decisions here with respect to the challenged practice of membership-shifting and the impact on the election of such a practice simply do not state a conclusion to which we can defer. Accordingly, the decision of the district court is reversed and the cause remanded for the district court to remand it to the Secretary with instructions to reconsider the matter and clearly explain the basis for his determination not to proceed.

*It is so ordered.*