**Elizabeth DOLE, Secretary of Labor, Plaintiff,**

**James M. McGee, Plaintiff–Intervenor,**

**v.**

**NATIONAL ALLIANCE OF POSTAL AND FEDERAL EMPLOYEES, Defendant.**

**Civ. A. No. 89–2019.**

United States District Court, District of Columbia.

Oct. 31, 1989.

---

Madelyn E. Johnson, Asst. U.S. Atty., Robert P. Davis, Solicitor of Labor, John F. Depenbrock, Asst. Solicitor, Marshall Harris, Regional Solicitor, and Sharon E. Hanely, Atty., Dept. of Labor, Washington, D.C., for plaintiff.

Robert E. Paul, Washington, D.C., for plaintiff-intervenor.

George C. Lacy, Jr., Washington, D.C., and Edward L. Welch, East Saint Louis, Ill., for defendant.

## MEMORANDUM AND ORDER RE MOTION FOR INJUNCTIVE RELIEF

REVERCOMB, District Judge.

This matter came before the Court on plaintiff Secretary of Labor and plaintiff-intervenor James McGee's motion for preliminary injunction. The Court having considered the parties' memoranda and the affidavits and evidence filed in support thereof, and oral argument being heard on October 23, 1989, it is hereby ordered that plaintiffs' motion for preliminary injunction is GRANTED and that the injunctive relief here granted is permanent.[1]

### I. *Factual Background*

The material facts of this case are undisputed.[2] In June 1988, the National Alliance of Postal and Federal Employees ("NAPFE" or "the Union") conducted its regularly-scheduled national and district officer elections. *Joint Statement,* pars. 5, 6. In the race for National President, Robert White defeated James McGee and, Comer Cash defeated Charles Denson in the vice presidential contest. *Id.,* par. 6. McGee and six other individuals thereafter challenged the election results by filing complaints with the Union and the Secretary of Labor. NAPFEA agreed to rerun the election. *Id.,* pars. 7–10. This election was supervised by the Department of Labor and eventually concluded on March 11, 1989. See *Affid. of Louis Blackmon* (Sept. 1989), p. 1; *Affid. of Louis Blackmon* (Oct. 1989), pars. 6–12; *Affid. of Robert White,* p. 3; *Board Minutes*[3] (Jan.1989) pp. 19–23, *Memo.,* dated Jan. 29, 1989; *Board Minutes* (April 1989), pp. 9–11; *Joint Statement,* par. 13, Exh. D–1.

---

1. On October 10, 1989, this Court ordered the trial of the action on the merits to be advanced and consolidated with the hearing of the application for preliminary injunction.

2. At the Court's request, the parties submitted a "Joint Stipulated Findings of Material Fact as to Which There is No Genuine Dispute," hereinafter referred to as "Joint Statement." Defendant also submitted a separate Statement Re Disputed Material Facts; however, given the standard of review that this Court must use, most of the issues raised in defendant's statement are not relevant to any material issues before the Court.

3. All parties submitted minutes of NAPFE's Executive Board ("the Board") meetings of January 26–29, 1989 (including a Memorandum from the Fact Finding Committee, dated January 29, 1989) and April 1–2, 1989 as part of the record. Hereinafter these documents are referred to, respectively as *"Board Minutes* (Jan. 1989)," *"Memo.,* Jan., 29, 1989," and *"Board Minutes* (April 1989)."

The rerun election produced dramatically different results than the first election—presidential candidate McGee defeated White and vice presidential candidate Denson defeated Cash. *Joint Statement*, par. 14, Exh. E. NAPFE, however, refused to honor these results (*id.*, par. 18); and White and Cash filed complaints with the Secretary of Labor. *Id.*, par. 16, Exhs. F–1, F–2. After investigating these complaints, the Secretary concluded that "the winning candidates from the [March 1989] rerun election ... were duly elected and should be installed in office as soon as practicable, but no later than Friday, July 7, 1989." *Id.*, par. 17, Exh. G. The Secretary provided the complainants and the Union with a Statement of Reasons which outlined the basis of her ruling. *Id.*, Exh. G, (hereinafter referred to as "*Statement of Reasons*").

Despite the Secretary's findings, NAPFE still refuses to install McGee and Denson and instead seeks to rerun the election yet another time. The Secretary and McGee have filed suit, asking the Court to issue an injunction directing defendant NAPFE to honor the March 1989 election results.

## II. *Analysis*

### Jurisdiction

In oral argument, counsel for defendant NAPFE for the first time challenged this Court's jurisdiction, claiming that no complaint had been filed with the Secretary of Labor. See 29 U.S.C. § 482.

Defendant's challenge, however, lacks merit.[4] The Department of Labor closely supervised the March rerun election and thereby retained jurisdiction over challenges to the results. See e.g. *Donovan v. Local 6, Washington Teachers' Union*, 747 F.2d 711 (D.C.Cir.1984); *Marshall v. Local U. No. 639, Intern. Bro., Etc.*, 593 F.2d 1297, 1298–1299 (D.C.Cir.1979). Consequently, both White and Cash filed complaints regarding the rerun election with the Secretary of Labor who investigated and ruled on the matter.[5] See *Joint Statement*, par. 16, Exhs. F–1, F–2; *Board Minutes* (April 1989), p. 11. This court now has subject-matter jurisdiction over the Secretary's attempts to enforce the election results. 29 U.S.C. § 482(b); see e.g., *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Shelley v. Brock*, 793 F.2d 1368 (D.C.Cir.1986).

### Injunctive Relief

A preliminary injunction should issue only upon a showing that 1) plaintiff is likely to prevail on the merits; 2) plaintiff will be irreparably injured if injunctive relief is not granted; 3) that a balancing of hardships tips in favor of the plaintiff; and 4) that the public interest will be served by the issuance of preliminary injunctive relief. *Virginia Petroleum Job. Ass'n v. Federal Power Com'n*, 259 F.2d 921, 925 (D.C.Cir.1958).

Here, it is abundantly clear that plaintiffs will prevail on the merits. Defendant challenges the March 1989 election on one ground only—that the NAPFE National Secretary failed to provide the NAPFE Election Committee with a single, self-contained list of certified eligible voters and their current addresses. The Secretary of Labor has already examined this issue—finding that the absence of a single list neither constituted an election violation nor affected the outcome of the election[6]—and

---

4. Defendant's contention is also completely contrary to President White's position in April of 1989 wherein he informed the Board members that the Labor Department had jurisdiction over challenges to the rerun election. "I'm going to go on record as filing an appeal with this Board. Based on the same observations that we have here, flaws in this election were present as in the last election. *Inasmuch as the Labor Department still has jurisdiction over it, they can review all of the things here that have to be dealt with.*" *Board Minutes* (April 1989), p. 11 (emphasis added).

5. Defendant's assertion that White and Cash complaints concerned the June 1988 (and not the rerun) election is contrary to the evidence of record. Mr. White's April 3, 1984 letter quite clearly states, "this is my written complaint against the manner in which the NAPFE rerun election was conducted." *Joint Statement*, Exh. F–1; see also *Board Minutes* (April 1989), p. 11.

6. *Statement of Reasons*, par. 1.

it is this examination that this Court must now review.

The standard by which the courts are to review the Secretary of Labor's decisions under the Labor–Management Reporting & Disclosure Act of 1959, 29 U.S.C. § 401 et seq., is most limited and quite deferential. *Shelley v. Brock*, 793 F.2d 1368, 1372 (D.C. Cir.1986). Except in the very rare case, the court's review is confined to examination of the Secretary's Statement of Reasons, and the determination whether the statement, *without more*, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Dunlop v. Bachowski*, 421 U.S. at 572–73, 95 S.Ct. at 1860–61 (emphasis added). Review may *not* extend to cognizance or trial of the complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election. *Id.* at 573, 95 S.Ct. at 1860.

■ Turning to the case at hand, the Secretary of Labor's finding that no violation arose from the Union's failure to provide a single voter list is fully supported by the Secretary's own factual investigation and by the record before this Court. All parties agree that the Election Committee received four separate lists which, when combined, comprised the names and addresses of all eligible voters.[7] *Statement of Reasons*, par. 1; *Joint Statement*, par.

11. NAPFE has never used a single self-contained voter list in *any* of its elections and, as defense counsel explained in oral argument, in March 1989, it was impossible for the Union to generate such a list.[8] *Board Minutes* (Jan.1989), pp. 20–23; *Affid. of Shirley Davis*. Under the circumstances, the Secretary of Labor was not "arbitrary and capricious" in concluding that no violation resulted from the Union's failure to use a single self-contained voter list.[9]

Furthermore, the Statement of Reasons plainly shows that the Secretary of Labor evaluated the effects of the absence of a single voter list. The Department examined whether eligible voters failed to receive ballots (*Statement of Reasons*, pars. 2, 10); whether ineligible persons received ballots and voted (*id.*, pars. 3, 10); and whether there were any instances of duplicate voting (*id.*, par. 11). In each case, the Secretary's investigation revealed that the claimed irregularities did not occur or that they affected less than fifteen total votes in an election which involved more than 15,000 ballots. *Id.*, pars. 2, 3, 9, 10. Based on these facts, this Court can not conclude that the Secretary of Labor acted arbitrarily and capriciously when she concluded that while the use of several lists "may have complicated the duties of the election committee, the investigation failed to dis-

---

**7.** The Election Committee had 1) a master roster of all NAPFE members, which included those who were delinquent and those for whom NAPFE has incorrect addresses; 2) a separate list of the members for whom NAPFE had incorrect addresses; 3) a separate list of the members who were delinquent; and 4) a separate list of the members who had improperly sought to revoke their authorizations to the Union. *Joint Statement*, par. 11.

**8.** NAPFE's computer program somehow precluded the running of a single list of all eligible voters and their most recent addresses. According to defense counsel, this computer problem has been corrected—but the correction was made *after* the March 1989 election.

**9.** The record before this Court does not reveal that use of a single list was mandated by the Union's by-laws or its Constitution. Moreover, defendant's suggestion that use of a single list was ordered by the Department of Labor is

implausible in light of the entire record before this Court. see *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The record shows that the Board discussed the matter with the Department of Labor during a November 1988 meeting, but the parties *never* reached an agreement about the matter. Acting on its own initiative, the NAPFE Executive Board then *attempted* to compile a single membership and address list. *Board Minutes* (Jan.1989), p. 19–23; see also *Board Minutes* (April 1989) pp. 4, 8–10. In fact, it was president White who actually raised the issue with the Board on January 29, 1989. "[A]nother item that we have to deal with is a good certified list to be used for this next election. We need to know and I think this Board needs to take a position that we are going to have one certified list, or should have one certified list that's been validated to the extreme extent that we possibly can, as being the list which is going to be used to conduct this election." *Board Minutes* (Jan.1989), p. 19.

**60**

close any significant problems in connection with the lists." *Id.*, par. 1. As evidenced by the Statement of Reasons, the Secretary's conclusions regarding the March 1989 election results are fully supported by her factual investigation, are entirely rational and are not contrary to law.

Possible Irreparable Injury/Hardships/Public Interest

Defendant further argues that plaintiff McGee should be denied injunctive relief that would install him in office because he can be recompensed for his lost wages and that greater harm would occur to the incumbents if they are unnecessarily displaced at this time.

▮ Defendant's arguments are specious. McGee and the other candidates were elected by their fellow union members and those members are entitled to the administration and leadership that they elected. Denial of the installation of the membership's duly elected leaders outweighs any hardship that the incumbents might suffer; and the injury to the membership can not be remedied by a simple monetary award to McGee and the other individual candidates. See *Kupau v. Yamamoto*, 622 F.2d 449, 457 (9th Cir.1980). Finally, enforcement of election results properly evaluated and approved by the Secretary of Labor promotes the purpose and goal of the Labor–Management Reporting and Disclosure Act—to correct "shocking abuses" in union self-governance and "to establish procedural safeguards for the conduct of union elections, and for the exercise of candidacy and voting rights by union members." See *Shelley v. Brock*, 793 F.2d 1368, 1371 (D.C.Cir.1986); *Usery v. Local U. No. 639 Intern. Bro. of Teamsters*, 543 F.2d 369, 375–376 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573.

In accordance with the findings of this Court,

IT IS HEREBY ORDERED THAT:

1. Within ten days from the date of this Order, James McGee shall be installed as National President of the National Alliance of Postal and Federal Employees; Charles Denson shall be installed as National First Vice President of the National Alliance of Postal and Federal Employees; Ernstine Taylor shall be installed as President of District V of the National Alliance of Postal and Federal Employees; and Anna Bell shall be installed as President of District IX of the National Alliance of Postal and Federal Employees;

2. Defendant, its agents, employees and representatives are enjoined and restrained from interfering with the foregoing installations.

In accordance with the Court's order consolidating the hearing for a preliminary injunction with a hearing on the merits of the case, the injunctive relief granted herein is permanent and this order is final.

SO ORDERED.