**Stuart E. BERNSEN, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Defendant.**

**No. CIV. A. 97–0228(JHG).**

United States District Court, District of Columbia.

Oct. 8, 1997.

---

Stuart Elliot Bernsen, pro se.

David T. Smorodin, U.S. Attorney's Office, Washington, DC, for Dept. of Labor.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff Stuart E. Bernsen ("plaintiff" or "Mr. Bernsen") filed this action seeking a determination that the Department of Labor ("Department") acted arbitrarily and capri-

ciously and not in accordance with law when it dismissed Mr. Bernsen's administrative complaint regarding the conduct of a federal-sector union election. Presently before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, plaintiff's motion will be denied and defendant's motion will be granted.

## I. Background

The following facts drawn from the Administrative Record are not disputed. Mr. Bernsen is an employee of the Pension Benefit Guaranty Corporation and, at all material times, a member of Chapter 211 of the National Treasury Employees Union. ("Chapter 211" or "Chapter"). In the fall of 1994, he was Chapter 211's incumbent president. On September 19, 1994, as part of his re-election bid, he mailed a campaign flyer to Chapter members. His opponent for the office of Chapter president, Hollie Becker-man Jaffe ("Ms. Jaffe") [1] brought the Bernsen flyer to the attention of a National Treasury Employees Union ("national union") attorney. That attorney then wrote a letter to Mr. Bernsen expressing concerns about the contents of the flyer and questioning its distribution; he sent the letter to Mr. Bernsen and distributed copies to the other members of the Chapter's Executive Board, including Ms. Jaffe. Prior to the election, Ms. Jaffe and her supporters distributed copies of the attorney's letter to some of the Chapter's members. At the biennial election held on September 29, 1994, plaintiff lost his reelection bid to Ms. Jaffe by a margin of six votes.

After losing the election, plaintiff filed an administrative complaint with the Department of Labor alleging that the outcome of the election had been affected by unlawful conduct on the part of his opponent. The Department investigated his allegations. *See* 29 C.F.R. § 458.50. However, the Department determined that his complaint did "not provide an adequate basis for instituting enforcement proceedings to set aside the challenged election." Statement of Reasons Dismissing the Complaint of Stuart E. Bernsen Concerning the Election of Union Officers Concluded by Chapter 211, National Treasury Employees Union on September 29,

1994, in Washington, D.C. at 1 (hereinafter "Statement of Reasons"). Therefore, the complaint was dismissed. Mr. Bensen requested agency review of that action and the decision to dismiss was affirmed. Letter from John Katch, Acting Deputy Assistant Secretary of Labor, to Stuart E. Bernsen (Sept. 30, 1996) (Pl.'s Mot. for Summ. J. Ex. 2). This suit followed.

In this action, plaintiff contends that the Department's decision not to seek a new, supervised election for the presidency of Chapter 211 was arbitrary, capricious, and an abuse of discretion because it was not in accordance with law. Compl. ¶ 2. Specifically, he argues that the Department erred as a matter of law in finding that his mailing of campaign flyers was unlawful. Compl. ¶ 27. Since his action was not unlawful, plaintiff contends that it cannot offset the election violation committed by his opponent and her supporters. *Id.* In plaintiff's view, the violation committed by his opponent and her supporters probably affected the outcome of the Chapter president race. Compl. ¶ 29. Therefore, Mr. Bernsen contends, because an election violation may have affected the outcome of a union election, the Department must proceed to seek a new election. Compl. ¶ 24.

## II. Discussion

### A. The Standard of Review

The Labor–Management Reporting and Disclosure Act of 1959 (the "LMRDA" or the "Act") was designed to ensure democracy in union affairs, including the election of union officers. To achieve this end, the Act prescribes certain substantive and procedural rules with which union elections must comply. 29 U.S.C. § 481. These union election provisions are made applicable to public sector unions by the Civil Service Reform Act of 1978. 5 U.S.C. § 7120; *see* 29 C.F.R. § 458.29. The LMRDA also vests the Secretary of Labor with the exclusive authority to bring suit to set aside union elections that do not comply with the Act. 29 U.S.C. § 482. The Secretary is authorized to initiate such suits when, in his or her discretion, the Sec-

---

1. Prior to the 1994 election, Ms. Jaffe was Chap- ter 211's incumbent vice-president.

retary determines that a probable violation of the Act has occurred *and* that the violation probably affected the outcome of the union's election. *See* 29 U.S.C. § 482(b); *Dunlop v. Bachowski,* 421 U.S. 560, 570, 95 S.Ct. 1851, 1859, 44 L.Ed.2d 377 (1975); *Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 474, 88 S.Ct. 643, 649, 19 L.Ed.2d 705 (1968).

■■■ "The standard of review by which the courts are to review the Secretary of Labor's decisions under the LMRDA is quite deferential." *Shelley v. Brock,* 793 F.2d 1368, 1372 (D.C.Cir.1986). This high degree of deference is a direct result of Congress' decision to "utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest." *Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964), *reh'g denied* 379 U.S. 984, 85 S.Ct. 639, 13 L.Ed.2d 577 (1965); *see also Bachowski,* 421 U.S. at 568, 95 S.Ct. at 1858 (citing *Calhoon* ); *Shelley,* 793 F.2d at 1372 (citing *Bachowski* ). The Supreme Court has concluded that "since the statute relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation [of the LMRDA] and the probable effect [on the outcome of the questioned election], clearly the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit." *Bachowski,* 421 U.S. at 571, 95 S.Ct. at 1860; *Doyle v. Brock,* 821 F.2d 778, 782 (D.C.Cir.1987). However, "to enable the reviewing court intelligently to review the Secretary's determination, the Secretary must provide the court and the complaining witness with copies of a statement of reasons supporting his [or her] determination." *Bachowski,* 421 U.S. at 571, 95 S.Ct. at 1860. This statement must be sufficient to enable the reviewing court "to determine with some measure of confidence whether or not the discretion ... has been

exercised in a manner that is neither arbitrary nor capricious." *Id.* (citations omitted). Except in rare cases, "the court's review [of the Secretary's decision] should be confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Bachowski,* 421 U.S. at 572–73, 95 S.Ct. at 1860. If the reviewing court determines that there was a "rational and defensible basis" for the Secretary's decision, "then that should be the end of this matter, for it is not the function of the Court to determine whether or not the case should be brought or what its outcome would be." *Id.* at 573, 95 S.Ct. at 1860 (citations omitted); *Dole v. National Alliance of Postal & Fed. Employees,* 725 F.Supp. 56, 59 (D.D.C.1989) ("Review may *not* extend to cognizance or trial of the complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election.")

## B. The Statement of Reasons

As required by 29 C.F.R. § 458.64(b), the Department prepared a Statement of Reasons documenting its investigation and explaining its decision not to institute proceedings to set aside the Chapter's election. This single-spaced, eight-page document examined each of the five specific allegations brought by Mr. Bernsen. With regard to four of those allegations, the Department found no violation of the Act.[2] However, with regard to one of his allegations, the Department found that Mr. Bernsen had violated one section of the Act and that both Mr. Bernsen and Ms. Jaffe "probably committed violations" of another section. Statement of Reasons at 5. Because the Department concluded that

---

**2.** Mr. Bernsen does not challenge the Department's "no violation" findings; therefore, these allegations will not be discussed in detail in this Opinion. To summarize, Mr. Bensen first alleged that the letter written by the national union's legal counsel in response to his flyer was an improper use of union resources to influence a union election contrary to 29 U.S.C. § 481(g). He also argued that a letter written by an em-

ployee of the agency for whom the union members worked constituted campaign literature in violation of 29 U.S.C. § 481(g). Next, he complained that Ms. Jaffe was a confidential employee and therefore ineligible to run for union office, 5 U.S.C. § 7120(e). Finally, he claimed that the election was not conducted by secret ballot, a violation of 29 U.S.C. § 481(d).

these violations[3] offset each other and had no effect on the outcome of the election, the Department declined to file a complaint to set aside the election. Id at 5. Mr. Bernsen challenges both the Department's finding that he violated the Act and its decision not to set aside the election after finding probable cause to believe that his opponent had also violated the Act.

The investigation revealed that the National Treasury Employees Union had filed an unfair labor practice (ULP) charge against the agency[4] in early 1994. Id. at 1. On July 27, 1994, the union and the agency signed a settlement agreement in which they promised to negotiate several pending issues. Id. They also agreed "that they would issue only a joint public statement concerning any issues while negotiations were in progress." Id. Mr. Bernsen and the national union's attorney were the designated union negotiators. Id.

By September 1994, the negotiations between the agency and the union had not yet concluded, but the Chapter's election was rapidly approaching. Id. at 2. Therefore, Mr. Bernsen asked the national union's attorney whether he could issue a statement to Chapter members concerning his role in the negotiations. Id. The attorney told Mr. Bernsen that such a statement would violate the settlement agreement, might jeopardize the negotiations,[5] and would not be in the union members' best interest. Id. Nevertheless, before the negotiations concluded, Mr.

Bernsen sent a campaign flyer entitled "BERNSEN WINS RESULTS" to approximately 120 Chapter members claiming that "due to his efforts, the ULP had been resolved and that the agency had made a number of substantial concessions." Id.

Ms. Jaffe brought the flyer to the attention of the national union's attorney. Id. He then wrote a letter to Mr. Bernsen, with copies to other members of the union's Executive Board including Ms. Jaffe, expressing concern that Mr. Bernsen had disregarded his advice and that distribution of the flyer could jeopardize the ongoing negotiations. Id. Subsequently, Ms. Jaffe and her supporters distributed copies to a few Chapter members. Id. at 4.

The Department determined that the attorney's letter "would seem to have been a confidential union document generated in the course of collective bargaining negotiations with the agency and not generally available to union members." Id. Therefore, the unauthorized use of that document by Ms. Jaffe and her supporters (i.e., distribution to Chapter members) was, more likely than not, "a violation of the prohibition in section 401(g) of the Act against the use of union property to promote the candidacy of any person. 29 U.S.C. § 481(g)."[6]

However, the Department's investigation also determined that the Act was violated when Mr. Bernsen copied the official membership list onto his home computer and used that list to make four separate campaign

---

**3.** At bottom, the Department determined that Mr. Bernsen "committed a violation of section 401(c) and that both [Mr. Bernsen] and [Ms. Jaffe] and her supporters *probably* committed violations of section 401(g)." Statement of Reasons at 5 (emphasis added). Although the Department did not rule definitively on whether or not Ms. Jaffe's conduct constituted a violation, it did determine that there was "probable cause" to believe that both individuals violated the Act when they "used official union documents for campaign purposes." Id. Thereafter, the Statement of Reasons refers repeatedly, albeit somewhat imprecisely, to the conduct of both candidates as "the violations." Id. For the purposes of defendant's motion, construing Mr. Bernsen as the non-moving party, the Court will assume that Ms. Jaffe *did* violate the Act.

**4.** The identity of the agency is not specified in the Statement of Reasons or the parties' papers.

**5.** The "negotiations were at a very critical juncture since there remained only two weeks within which to bargain over certain unresolved issues." Id.

**6.** Id. at 4–5. Section 401(g) of the Act is codified at 29 U.S.C. § 481(g) and provides:

No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.
29 U.S.C. § 481(g).

mailings to members. Statement of Reasons at 4. The Department found that Mr. Bernsen had violated 29 U.S.C. § 481(g) by making unauthorized use of union property (i.e., the membership list) to promote his own candidacy for Chapter president. *Id.* He had also violated 29 U.S.C. § 481(c) by failing to make the membership list equally available to other candidates.[7] The Department conducted an "exhaustive review of the large quantity of union documents provided by [Mr. Bernsen]," interviewed the election chairperson, and determined that "it does not appear that the membership list was made available to *any other candidate for office* and section [481(c) ] was violated." *Id.* (emphasis added).

Although the Department determined that Mr. Bernsen had violated the Act and that Ms. Jaffe and her supporters had probably violated the Act, the Department declined to take action to set aside the election because "it would appear that the probable effects of these Title IV violations offset one another." *Id.* The conclusion that Mr. Bernsen's violation and Ms. Jaffe's probable violation offset each other, and therefore had no net effect on the election outcome, was supported by several factors, including:

> the violations are similar in nature and all stem from the distribution of campaign literature. Further, the violations are interrelated in that the distribution of the attorney's letter appears to have been precipitated by [Mr. Bernsen's] earlier distribution of campaign materials discussing the ongoing negotiations. Consequently, upon careful consideration of the equities and the probable effect of any conceivable violations attributable to both slates, the Department has determined that the evidence does not support a finding that any

of these violations may have affected the election outcome.

*Id.* Because these violations had no net effect on the outcome of the election, the Department declined to overturn the election.

### C. The Department's Finding that Mr. Bernsen Violated the Act

 Mr. Bernsen argues that under 29 U.S.C. § 481(c) "as a candidate for union office, [he] had an absolute right to have his campaign flyer mailed," Mem. in Supp. of Mot. of Pl. for Summ. J. at 9, and, therefore, the Department's finding that he violated the Act is contrary to law. However, he misunderstands both the scope of § 481(c) and the Department's findings. Section 481(c) requires that a union comply with "all *reasonable* requests of a candidate to distribute campaign materials." 29 U.S.C. § 481(c) (emphasis added). The fact that candidate Bernsen intended to distribute campaign literature which he had been warned would violate a settlement agreement, potentially compromise ongoing union-agency negotiations, and misconstrue his own role in the process, Statement of Reasons at 2, makes his request unreasonable. Therefore, he had no "absolute" right to have it mailed. In addition, as a union *officer* (incumbent President), Mr. Bernsen had a duty under § 481(c) "to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members." 29 U.S.C. § 481(c). When he copied the membership list onto his home computer, Statement of Reasons at 4, but failed to make the availability of electronic copies known to other candidates, *Id.* at 5, President Bernsen breached his duty not to discriminate in favor of any candidate. *See, e.g., Reich v. Federation of Catholic Teachers, Inc.,* 853 F.Supp. 710, 715–16 (S.D.N.Y.1994) (where election is

---

7. *Id.* at 5. Section 481(c) provides

> Every national or international labor organization ... and every local labor organization, and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization ... to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization *and to refrain from discrimination in favor of or*

against any candidate with respect to the use of lists of members .... Every bona fide candidate shall have the right, <u>once</u> within 30 days prior to an election ... to inspect a list containing the names and last known addresses of all members of the labor organization...., which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof. Adequate safeguards to insure a fair election shall be provided ...

29 U.S.C. § 481(c) (emphasis added).

contested, election committee should maintain arms-length relationship to all candidates and incumbent officers should distance themselves from election process). Therefore, the Court finds the Department's determination that plaintiff violated § 481(c) to be rational, defensible, and fully supported by the Statement of Reasons. It is not contrary to law.

■ The Department also found that Mr. Bernsen misappropriated union property in violation of 29 U.S.C. § 481(g) in support of his own election campaign. Section 481(g) prohibits the use of "moneys received by any labor organization by way of dues, assessment or similar levy . . . to promote the candidacy of any person." 29 U.S.C. § 481(g). Regulations promulgated by the Secretary of Labor interpret § 481(g) as prohibiting union officers from using "union funds, facilities, equipment, stationery, etc." to promote their own campaigns. 29 C.F.R. § 452.78; *see Donovan v. Local 719, U.A.A.I W,* 561 F.Supp. 54, 57 & n. 2 (1982). The Department determined that the membership "list was an official union document and there is no evidence that it was generally made available to union members. [Mr. Bernsen's] unauthorized use of the list thus constituted a use of union property to promote his candidacy in violation of section 401(g) of the Act." Statement of Reasons at 4. The Court finds this decision to be rational and defensible, not contrary to law. The fact that plaintiff made a copy of the list rather than removing the actual list to his home does not absolve him; his action was still unauthorized and he used the resulting list to promote his own candidacy.

*D. The Department's Finding of no Probable Effect*

This case presents a sharply focused question: whether the concept of "probable effect" on the election outcome refers to *any* influence whatsoever on the votes cast or only to a net effect large enough to have changed the final result (i.e., resulted in a different candidate's election). The Supreme Court has stated that the Secretary's finding of a Section 481 violation establishes a prima facie case that the violation may have affect-

ed the outcome of the election. *Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, 506–07, 88 S.Ct. 1743, 1752, 20 L.Ed.2d 763 (1968) [ hereinafter *Hotel, Motel* ] (discussing legislative history of "may have affected" language). Some later cases appear to have interpreted the resulting presumption of effect to be nearly irrebuttable. *See, e.g., Donovan v. International Ass'n of Machinists, Local Lodge 851,* 622 F.Supp. 394, 397–98 (D.C.Ill.1985) (holding that, although Secretary failed to find any union member affected by the violation, "statutory violation may have affected the outcome" and therefore nullifying election results). Espousing this view, Mr. Bernsen argues that because the Secretary found violations in this case, there was an effect on the election results and the Secretary must move to overturn that election. Mem. in Supp. of Mot. of Pl. for Summ. J. at 1–2.

However, this Court finds that the "any effect" interpretation plaintiff advocates rests on a superficial reading ˙of the case law. Considering the legislative history of the Act, the Supreme Court noted that the "may have affected" language in combination with the requirement that such finding be made "upon a preponderance of the evidence" was intended to

> free unions from the disruptive effect of a voided election unless there is a *meaningful relation between a violation of the Act and results of a particular election.* For example, if the Secretary's investigation revealed that 20 percent of the votes in an election had been tampered with, but that all officers had won by an 8–1 margin, the proviso should prevent upsetting that election.

*Hotel, Motel,* 391 U.S. at 507, 88 S.Ct. at 1752 (citing *Wirtz v. Local Unions 410, 410A, 410B, and 410C, IUOE,* 366 F.2d 438, 443 (2nd Cir.1966)) (emphasis added).

■ In this case, the Court finds that the Department's use of a "net effect" analysis was rational and defensible, neither arbitrary nor capricious nor contrary to law. Through its investigation, the Department determined that Mr. Bernsen violated the Act by misappropriating the union's membership list to promote his own candidacy for president.

Statement of Reasons at 4. He then used the misappropriated list to disseminate misleading information to approximately 120 union members regarding the status of union-agency negotiations and his role in those negotiations. *See* Statement of Reasons at 2–4. To counter Mr. Bernsen's misrepresentations, Ms. Jaffe and her supporters then distributed to no greater than 44 [8] members a copy of the attorney's letter that painted a more accurate picture of the status of the union-agency negotiations.

After a thorough investigation, the Department determined that the two violations did not have a net effect on the outcome of this union election. This conclusion is supported by the Statement of Reasons and therefore is not arbitrary and capricious. Mr. Bernsen's misappropriation of the membership list enabled him to disseminate false campaign material; by countering his false material, with misappropriated (but accurate) material of her own, Ms. Jaffe evened the electoral playing field. In addition, Mr. Bernsen's material was distributed to approximately 120 union members and strongly promoted his campaign for re-election by indicating that "due to his efforts, the ULP had been resolved and that the agency had made a number of substantial concessions." Statement of Reasons at 2. Ms. Jaffe's misappropriated union material, which corrected the misimpressions generated by Mr. Bernsen's flyer, was distributed to not more than 44 people. *Id.* at 4. Mr. Bernsen would have the Court consider only the people who received the attorney's letter from his opponent and find that these votes could have had an effect on the election's outcome. This approach, of course, ignores the members who received only Mr. Bernsen's flyer and not Ms. Jaffe's material, and the Department's conclusion about the offsetting nature of *both* violations.

The Court finds that the Department had a rational and defensible basis for its decision not to file a complaint seeking to overturn Chapter 211's presidential election. It was not arbitrary and capricious for the Department to find that these violations offset each other and, consequently, had no net effect on the outcome of the union's election. *See Shelley v. Brock,* 793 F.2d 1368, 1377 (D.C.Cir.1986) (finding Secretary's determination that, due to widespread violations by both slates, union expenditure violations probably did not have an affect on the election outcome to be a "reasonable exercise of the expert discretion entrusted to him" but remanding for reconsideration of a different category of violations). The Department's decision is amply supported by the Statement of Reasons' detailed recitation of the facts and the discussion of the factors considered in reaching that decision. This Court find the Department's decision in this case to be an appropriate exercise of discretion.

## III. Conclusion

Because there are no genuine issues of material fact in dispute and the defendant is entitled to judgment as a matter of law, it is hereby

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is

**FURTHER ORDERED** that defendant's motion for summary judgment shall be, and hereby is, granted.

IT IS SO ORDERED.

---

8. One of Ms. Jaffe's supporters made 50 copies of the letter. Statement of Reasons at 4. The Department's investigation determined that this person distributed approximately 15 copies to co-workers. *Id.* Twenty-nine persons later submitted written statements at Mr. Bernsen's request indicating that they had found a copy of the letter in their work mail box or had been given a copy by Ms. Jaffe or her supporters. *Id.* Assuming the 15 people to whom the supporter distributed copies do not include any of the 29 people who submitted written statements, the maximum number of persons to whom the letter was distributed is 44.