Robert R. **REICH**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**FEDERATION OF CATHOLIC TEACHERS, INC.,** Defendant.

No. 93 Civ. 6224(MEL).

United States District Court, S.D. New York.

May 18, 1994.

Mary Jo White, U.S. Atty. for S.D.N.Y., New York City, for plaintiff (Manvin S. Mayell, Christine H. Chung, Asst. U.S. Attys., of counsel).

Guazzo, Perelson, Rushfield & Guazzo, Esqs., New York City, for defendant (Mark C. Rushfield, of counsel).

LASKER, District Judge.

The Secretary of Labor brings this action to set aside the March 1993 election of the officers and council members of the Federation of Catholic Teachers. The Secretary contends that the election was conducted in violation of Title IV of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 481 *et seq.* (1985).

The Federation of Catholic Teachers ("FCT") is a labor union representing approximately 2,100 teachers and other professionals employed at elementary and high schools run by the Archdiocese of New York. On March 31, 1993, the FCT conducted a mail ballot election for President, Secretary, Treasurer, and eight Executive Council Member-at-Large positions.

The Secretary's complaint alleges that the FCT conducted an "unfair" election in violation of the LMRDA by (1) "using the official ballot to promote the candidacy of the incumbent slate of officers," and (2) "allowing a candidate for office, the incumbent President, to become improperly involved in the election process." The ballot was "unfair" within the meaning of 29 U.S.C. § 481(c), the Secretary contends, because it "designated the incumbent slate as 'The Action Team' while listing the challenging slate simply as 'The Opposition.'"

The FCT denies both allegations and argues also that the second allegation—relating to the conduct of the incumbent president Margaret Menard—was not raised by the original complainant, Michele Cody, in her protest letter to the FCT, and that her failure to exhaust internal union remedies bars the Secretary from pressing that claim.

The case was tried to the bench.

## I.

The facts relevant to my disposition of the issues are as follows. The FCT holds elections for union officers every three years. For 18 years prior to the 1993 election, no election had been contested, that is, no opposition slates ran in those elections. The incumbent president, Margaret Menard, has held the post for 10 years and, in the 10 years prior, was the union's Secretary. Menard works for the union full time, on salary. For its March 1993 election, Menard appointed Marilyn Slattery and Elizabeth O'Keefe to the Nomination and Election Committee ("Committee"), pursuant to the union's by-laws (Joint Ex. 20, p. 6).

In its February 1993 union newsletter, the FCT informed the membership that a regularly-scheduled election of union officers would be held in March (Joint Ex. 1). Members were advised that nominations should be addressed to the Committee at a designated post office box, and requests for mailing lists were to be sent to the union.

Michele Cody, a teacher at St. Charles Elementary School on Staten Island, as well as several other teachers who were dissatisfied with the management of the union, formed an opposition slate to run against the incumbents. The opposition slate named itself "Candidates for Change."

By two letters, both dated February 16, 1993, Cody submitted her nomination petition for the office of president (Joint Ex. 30) and made two requests of the Committee: (i) to obtain, no later than March 5, a membership list with addresses for campaign mailings, and (ii) to be present at the counting of the ballots on March 31, 1993 (Joint Ex. 4).

Cody testified that she addressed both letters to Slattery rather than to the union office because she wanted the Committee to handle her queries rather than the incumbent president Menard, whom she was seeking to unseat. Cody said she could not reach Slattery other than through mail sent to the

post office box because she did not know Slattery's home address or the school where Slattery was employed. When Cody did not hear from the Committee after several days, she sent the same two requests in a letter dated February 22, 1993 to Menard at the union office (Joint Ex. 6).

The FCT Secretary, John Schaut, responded to Cody's letter on behalf of Menard, who was away on vacation but had kept in touch with Schaut by telephone. Schaut scheduled a March 3 appointment for the opposition candidates to come to the union's Manhattan office to obtain the membership list.

On March 4, the Committee met at the union office to certify the nominations. At no time, however, did the Committee ever notify the candidates that their nominations had been approved. The Committee drew up a handwritten ballot that designated the incumbent slate as "Team A" and the opposition slate as "Team B," and simply listed the names of the candidates under the respective slates (Joint Ex. 2).

Slattery testified that although she had served on the Committee in prior elections, she had never presided over a contested election nor had she read the Department of Labor handbook or known the regulations.

After the handwritten ballot was prepared, Schaut offered to have the ballot professionally typed if the Committee wished, which they did. Schaut then conferred by telephone with Menard, who was still on vacation, and suggested that the ballot be typed by Menard's daughter-in-law Elizabeth Walsh–Menard, whom he knew to be an experienced secretary who was knowledgeable about labor elections. Menard consented. Schaut then placed in a folder the handwritten ballot (Joint Ex. 2), the Department of Labor handbook titled "Electing Union Officers" (Joint Ex. 13), and campaign literature from the incumbent slate in the form of a sample ballot with the heading "Vote for the Action Team" in large bold letters (Joint Ex. 26). He arranged to deliver the folder to Walsh–Menard for typing.

Walsh–Menard testified that she had done previous secretarial work for the FCT as a favor to her mother-in-law and had, in the course of her work as a legal secretary for several firms specializing in labor law, prepared ballots for union elections. Based on this experience, Walsh–Menard testified, she made several editorial changes and additions to the handwritten ballot: she (i) gave the ballot a title—"Official Ballot"; (ii) added the phrase, "the following members in good standing have been nominated for Council Offices of the Federation of Catholic Teachers"; (iii) included balloting instructions taken from the Department of Labor handbook; (iv) placed the two slates of candidates in double-lined boxes for better appearance; (v) replaced "Team A" and "Team B" for "Incumbents" and "Opposition"; (vi) arranged the names of those running for Executive Council within each slate in alphabetical order; (vii) added the phrase "The Action Team" to the top of the incumbent slate because it had been on the campaign literature of the incumbents and because she knew it to be their traditional slate designation (Joint Ex. 3).

Schaut testified that on March 5 he picked up the typed ballot from Walsh–Menard and sent it to the printer without looking at it or presenting it either to the Committee or a representative of the opposition for review or approval.

By March 8, Cody had still not heard from the Committee and wrote another letter to Slattery, with copy to Menard, expressing her concern over the Committee's failure to respond and advising Slattery that the Committee is "presently in violation of the labor laws" because it had not arranged for candidates to have observers "at the preparation and mailing of the ballots, and at their receipt, opening and counting" (Joint Ex. 8).

On March 10, Menard, who had returned from vacation, phoned Cody around mid-morning at the St. Charles School in response to Cody's March 8 letter to her. Menard read to Cody the names of the opposition candidates as they appeared on the printed ballot. This was the first time Cody, or anyone on the opposition slate, had been told that their nominations had been accepted by the Committee. Menard then advised Cody that the printed ballots were to be stuffed into envelopes that afternoon and

that Cody could come to the union office to observe the process. Cody replied that she would be unable to attend at the union's Manhattan office on such short notice and arranged to have a fellow candidate on the opposition slate, John McEvilly, observe the mailing.

McEvilly arrived at the union office that afternoon as the opposition slate's representative. He testified that he gave the ballot cursory review, partly because he was told that Menard had already read the names to Cody and because he thought his role was just to make sure that nothing "totally outrageous" was going on.

On March 13, Slattery telephoned Cody in response to Cody's letters of February 16 and 22, in which Cody had requested to be present at the counting of the ballots. This was the first and only communication between a member of the Election Committee and Cody.

The ballots were counted on March 31, with Cody and other candidates present. Menard was reelected president by a vote of 366 to 338. Schaut was reelected by a vote of 368 to 333. All seven of the incumbent candidates for Executive Council were elected. The eighth Executive Council spot went to John McEvilly of the opposition slate.

By letters dated April 6 (Joint Ex. 27) and April 27 (Joint Ex. 28), Cody protested the election to the FCT.

## II.

The Secretary's first allegation is that the incumbent slate designation "The Action Team" rendered the FCT's ballot "unfair" and, therefore, in violation of the LMRDA as a matter of law.

29 U.S.C. § 481(c) requires that "[a]dequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots."

The governing provision of the Code of Federal Regulations states in relevant part:

the Act contains a general mandate ... that adequate safeguards to insure a fair election shall be provided. Such safeguards are not required to be included in the union's constitution and bylaws, but they must be observed. A labor organization's wide range of discretion regarding the conduct of elections is thus circumscribed by a general rule of fairness. For example, if one candidate is permitted to have his nickname appear on the ballot, his opponent should enjoy the same privilege.

29 C.F.R. § 452.110(a) (1993).

■ The example of unfairness provided in the regulation—that the omission of a nickname constitutes an unfair act—is clearly analogous to the situation presented in this case. It seems inescapable, therefore, that the FCT ballot, designating one slate as "The Action Team" while omitting the slate name for the opposition, was "unfair" within the meaning of § 481(c) and constituted a violation of the Act.[1]

■ This objective determination does not constitute a finding that the violation was committed purposefully or with malice. The wording of the ballot was not the result of a conspiracy or evil intent on the part of anyone. Rather, it was the result of accident and inexperience on the part of those involved. The two members of the Committee, neither of whom had ever managed a contested election, were not adequately familiar with Department of Labor regulations governing union elections. Their handwritten draft ballot did not contain instructions for voting or specify the cutoff date for return of the ballots, as suggested by the Department of Labor in its handbook on how to conduct a proper mail ballot election. The result was that Walsh–Menard attempted to fill the gaps. Walsh–Menard's editing of the ballot, though well-intentioned and imaginative, resulted in the inadvertent violation. Her innocent error was not discovered because no one with knowledge of the statutory requirements, including the Election Committee, ever proofread the typed ballot.

---

1. Having found a violation of § 481(c), we need not decide whether the slate designation "The Action Team" that appeared on the ballot, printed with union money, promoted the candidacy of the incumbents in violation of § 481(g).

Nevertheless, just as a violation may occur even if it was not prompted by improper motives, it cannot be cured because those involved "acted from the best of motives." *Usery v. Stove, Furnace & Allied Appliance Workers,* 547 F.2d 1043, 1045 (8th Cir.1977).

Once a violation of § 481 is found, the statute requires that if the violation "*may* have affected the outcome of an election, the court shall declare the election ... to be void and direct the conduct of a new election under supervision of the Secretary...." 29 U.S.C. § 482(c)(2) (emphasis added).

The Supreme Court has held that the existence of a violation establishes a prima facie case that the outcome of the election may have been affected. *Wirtz v. Hotel, Motel & Club Emp. Union, Local 6,* 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). The defendant bears a heavy burden of overcoming the presumption and must do so by producing "tangible" rather than speculative evidence. *Id.* at 508, 88 S.Ct. at 1752. In some cases, the burden is so great as to be insurmountable. *McLaughlin v. American Fed. of Musicians,* 700 F.Supp. 726, 737 (S.D.N.Y.1988); *Usery v. International Org. of Masters, Mates & Pilots,* 422 F.Supp. 1221, 1226 (S.D.N.Y.), *aff'd,* 538 F.2d 946 (2d Cir.1976). This is such a case.

The results of FCT's March 1993 election were extremely close. Of roughly 700 votes cast, Menard prevailed over Cody by a margin of 28 votes; the incumbent treasurer won by only 21 votes; the incumbent secretary won by 35 votes. Given the slim margins of victory and the nature of the violation, any proof adduced by the FCT as to how members might have voted had the ballot been different would necessarily be speculative. For this reason, we denied FCT's pre-trial request to engage in discovery on this issue.

Because we find that there is and can be no proof to overcome the presumption that the violation "may have affected the outcome," a new election must be ordered under the supervision of the Secretary.

### III.

The Secretary's second claim is that the incumbent president Menard was "impermissibly involved" in the election process in violation of the Act. At the outset, the FCT argues that Cody had not exhausted internal union remedies and that the Secretary is barred from pursuing this claim. The FCT's argument is without merit.

The exhaustion requirement is met "when the union reasonably should have been able to discern from the protest that the member was complaining of the violation ultimately litigated by the Secretary." *Brock v. International Union of Operating Engineers,* 790 F.2d 508, 512 (6th Cir.1986).

The FCT could reasonably have discerned the allegation relating to Menard from Point 8 of Cody's protest letter to the FCT, dated April 6, 1993, which states: "Marilyn Slattery is the chairperson of the election committee, not Marge Menard" (Joint Ex. 27).

Although the Secretary is not barred from pursuing the claim that Menard "co-opted the ballot preparation process," the charge is not supported by the evidence.

While it is true that Menard has been quite entrenched in her leadership role, having served as an officer of the union for more than 20 years, the evidence did not establish that she was improperly involved in the election process. Her sole actions in connection with the election—except for appointing the Committee, which she was authorized to do by the union bylaws—was consent to her daughter-in-law typing the actual ballot and phoning Cody to advise her that the ballots were scheduled to be mailed. There is no evidence to suggest that Menard directed or caused the changes to be made on the typed ballot, or that Menard directed the Committee not to respond to the opposition candidates.

However, although Menard committed no culpable acts, the election was handled with excessive informality and a casual attitude to the requirements of the law. In contrast to FCT's prior elections, a contested race requires procedural safeguards to ensure fairness to all candidates. For example, union officials should have left it to the Committee to respond to the opposition candidates' requests, rather than doing so themselves. Moreover, in appointing Slattery and O'Keefe to the Election Committee, Menard

should have advised them that in a contested election the Committee was required to act independently of the union and to be easily accessible to all the candidates. The Committee members should also have been instructed to familiarize themselves with and abide by the Department of Labor handbook on the requirements for conducting a fair election, and to answer promptly all inquiries or queries from any candidate.

In the new election, the Committee should respond promptly and in writing to all inquiries; give due notice to the candidates of important dates, i.e., preparation, mailing and counting of the ballots, and an opportunity to be present at each stage; allow both sides to inspect the final ballot before mailing to assure themselves of its accuracy and fairness; and maintain an arms-length distance from both sides.

\* \* \* \* \* \*

For the reasons stated in Part II above, the March 31, 1993 election of the Federation of Catholic Teachers is adjudged to have violated 29 U.S.C. § 481(c) and its results are set aside.

. This memorandum contains the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

Submit judgment on notice.