**C. Sam THEODUS, et al., Appellants**

**v.**

**Ann McLAUGHLIN, Secretary, U.S. Department of Labor.**

**No. 87–5321.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 15, 1988.

Decided Aug. 5, 1988.

Arthur L. Fox, II, with whom Alan B. Morrison, Washington, D.C., was on the brief, for appellants.

Michael Kimmel, Atty., Dept. of Justice, with whom, Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Robert S. Greenspan, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before ROBINSON, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This case involves an appeal by the appellants, Theodus et al., from the District Court's resolution of cross-motions for summary judgment. The District Court denied appellants' motion for summary judgment and simultaneously granted the summary judgment motion of defendant-appellee, the Secretary of Labor ("DOL" or "the Secretary"). For the reasons set forth below, we affirm.

## I. FACTUAL BACKGROUND

The individual appellants, Sam Theodus, Alex Kublis, Norman Sercombe, and Frank Zerman, are members in good standing of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America ("IBT" or "Teamsters"). Appellant Teamsters for a Democratic Union ("TDU") is an unincorporated association comprised of IBT members whose stated purpose is to reform and democratize the IBT. The appellants contend that the procedures used to select the delegates to the 1986 IBT convention, at which national officers were elected, were both anti-democratic and violated Title IV of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA" or "the Act"), 29 U.S.C. § 481 *et seq.* (1982 & Supp. IV 1986). More specifically, the appellants contend that the automatic selection of the officers of union locals as *ex officio* delegates to IBT's national convention violates Title IV of the Act.

Article III of the IBT Constitution requires that each local union be represented at the Convention by one or more delegates. The precise number of delegates for each local is determined on the basis of that local's numerical membership. The officers and business agents of each local also serve as the convention delegates for their local. Separate delegate elections are held only if a local does not have a sufficient number of officers or business agents to fill its delegation. Approximately 90% of the 1986 IBT Convention delegates were *ex officio* delegates.

At the 1986 IBT Convention, incumbent IBT President Jackie Presser and his slate of candidates were elected by a majority of the convention delegates. In addition to President Presser, a Secretary Treasurer, 16 Vice-Presidents and 3 Trustees were elected.

Appellants Kublis, Sercombe, and Zerman filed internal pre-election protests with the IBT asserting that the use of *ex officio* delegates violated Title IV of the Act. After the election, those protests were renewed and appellant Theodus also filed an internal post-election protest with the IBT. All of those protests were denied by IBT.

Simultaneously with the filing of their post-election protests with the IBT, the four individual appellants also filed post-election protests with the DOL. The appellants urged the DOL to sue to set the 1986 IBT elections aside after the DOL concluded an investigation as required by 29 U.S.C. § 482 (1982 & Supp. IV 1986). On August 22, 1986, the DOL concluded that legal action was not warranted and declined to set the 1986 IBT elections aside. In so doing the Secretary reaffirmed an interpretation of the statutory provisions relating to the election of union officers, 29 U.S.C. § 481(a), followed by DOL since 1961. The appellants then filed an action in District Court seeking review of the DOL's decision. Both parties filed motions for summary judgment. On July 17, 1987, the District Court granted the motion of the appellee and denied the motion of the appellants.

## II. ANALYSIS

Neither party disputes the propriety of summary judgment treatment for this case. The minor differences in the submissions of the parties under Local Rule 108(h) of the District Court are not as to any genuine issue of *material* fact. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). In short, the parties, in effect, presented what amounted to an agreed upon statement of fact so that the appeal before us asks the sole question of whether Judge Pratt applied the proper standard of review in upholding the Secretary's interpretation of 29 U.S.C. § 481.

Therefore, this case does not involve an issue of fact, but rather a pure question of statutory construction. It is well settled that questions of statutory interpretation "are for the courts to resolve, giving appro-

priate weight to the judgment of those whose special duty is to administer the questioned statute." *NLRB v. Hearst*, 322 U.S. 111, 130–31, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944). In addition, the DOL's interpretations of the Act are reviewable by the courts. *See Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); 5 U.S.C. §§ 702, 704 (1982 & Supp. IV 1986). This then raises the question of: What is the appropriate standard of review?

In *Chevron v. Natural Resources Defense Council*, the Court held that

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute.... Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 842–43, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnotes omitted).

█ Thus, *Chevron* requires the District Court, and this Court in reviewing the District Court's decision, to first determine whether the Act clearly and unambiguously expresses the intent of Congress. Looking to the language of the statute, we find three subsections of 29 U.S.C. § 481 to be directly relevant to the present inquiry. Section 481(a) provides:

> Every national or international labor organization ... [with certain exceptions not applicable to the IBT] shall elect its officers not less often than once every five years either by secret ballot among the members in good standing or at a

convention of delegates chosen by secret ballot.

Section 481(b) applies to the locals and provides that "[e]very local labor organization shall elect its officers not less often than every three years by secret ballot among the members in good standing." 29 U.S.C. § 481(b). Section 481(d) deals with the election of the officers of "intermediate bodies" and provides for their election by "the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot." 29 U.S.C. § 481(d).

In compliance with the requirement of § 481(a), the IBT selects its national officers at a convention of delegates held every five years. Appellants' difficulty with the IBT procedure lies in the delegate selection process. For over twenty-five years, the IBT has seated local union officers, chosen by secret ballot every three years pursuant to § 481(b), as delegates to the national convention. IBT Constitution, Art. XXII, § 4(b). Only when the number of local officers and/or elected business agents is less than the number of delegates to which the local union is entitled under the IBT representation allocation are separate secret ballot elections held for additional delegates to serve specifically as delegates and fill out the allotted delegation. *Id.* The parties agree that the locals generally provide notice to the members voting in local elections that the officers' duties will include service as *ex officio* delegates and that, as noted above, the vast majority of the 1986 delegates were local officers and business agents serving *ex officio.*

The DOL first had occasion to interpret the effect of the relevant sections on the *ex officio* service of local officers as delegates to national or international conventions shortly after the 1959 enactment of the Act. Responding to an inquiry from the Communication Workers of America ("CWA"), which used local presidents as *ex officio* delegates, the DOL by letter advised that the practice was not unlawful as long as the local president had been elected

by secret ballot.[1] Then in 1966, another DOL official advised the counsel of IBT by letter that the Teamsters *ex officio* procedure would not violate the Act.[2] In 1973, DOL added its prior rulings on the *ex officio* delegate practice to its codified interpretive rules under Title IV of the Act. The codified rule provides:

§ 452.120 Officers as delegates.

Officers of labor organizations who have been elected by secret ballot vote of their respective memberships may, by virtue of their election to office, serve as delegates to conventions at which officers will be elected, if the constitution and bylaws of the labor organization so provide. In such cases it is advisable to have a statement to this effect included on the ballots....

29 C.F.R. § 452.120.

Appellants argue that the District Court improperly applied *Chevron* deference in this case. They contend that Congress in the LMRDA did not intend to afford the Secretary of Labor the same sort of power to fill gaps or resolve ambiguities in the Act as Congress had expressly delegated to the Administrator of the EPA under the Clean Air Act which *Chevron* construed. Relying in part on *UAW v. Brock*, 783 F.2d 237 (D.C.Cir.1986), they argue that no deference should be afforded to the Secretary's interpretation. The Act provides that "if [the Secretary] finds probable cause to believe that a violation of this title has occurred ... he shall ... bring a civil action against the labor organization." 29 U.S.C. § 482(b). Therefore, they argue the federal judiciary and not the Secretary has the authority and responsibility for developing interpretive law. It is true that "the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear Congressional intent." *Chevron v. NRDC*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9 (citation omitted). This

does not mean, however, that the administrative interpretation is not entitled to deference. Appellants argue that *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1220–22, 94 L.Ed.2d 434 (1987), takes the interpretation of statutes wholly outside the realm of *Chevron* deference. Rather the *Cardoza–Fonseca* decision is in fact an application of the first step of a *Chevron* analysis. That first step involves the application of "traditional tools of statutory construction" to determine whether Congress had a "clear" or "unambiguous" intent on "the precise question at issue." *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9. *See NLRB v. United Food and Commercial Workers Union*, — U.S. —, 108 S.Ct. 413, 426, 98 L.Ed.2d 429 (1987) (Scalia, J., concurring). If, after we subject the statute to that analysis, we conclude that "the statute is silent or ambiguous with respect to the specific issue," then we afford *Chevron* deference to the agency and uphold the administrative construction if it is based on a "permissible construction of the statute." *NLRB v. United Food and Commercial Workers Union*, — U.S. —, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987).

Here, as we noted above, Congress has expressly made it the decision of the Secretary to "find[ ] probable cause to believe that a violation of this Title has occurred...." 29 U.S.C. § 482(b). To make that determination obviously requires an interpretation of the statute. As we have noted in a previous construction of the LMRDA, " 'the statute relies upon the special knowledge and discretion of the Secretary for determination of both the probable violation and the probable effect.' " *Shelley v. Brock*, 793 F.2d 1368, 1372 (D.C.Cir.1986) (quoting *Dunlop v. Bachowski*, 421 U.S. 560, 571, 95 S.Ct. 1851, 1860, 44 L.Ed.2d 377 (1975)). Therefore, our standard for review is a deferential one. We will uphold the Secretary's inter-

**1.** DOL correspondence with CWA, March 18, 1960, Joint Appendix (JA) at 58.

**2.** Letter of Frank M. Kloiler, Director, U.S. DOL, Office of Labor Management and Welfare Pension Reports, to David Prebiant, Counsel, International Brotherhood of Teamsters, January 28, 1966 (JA 60); reconfirmed in letter from J. Lurie, Director, U.S. DOL, Office of Labor Management and Welfare Pension Reports to David Prebiant, June 28, 1971 (JA 61).

pretation provided it is reasonable and not inconsistent with the clear and unambiguously expressed intent of Congress. Here, the Secretary's determination passes that test. Appellants contend that the Secretary's interpretation is inconsistent with the clear and unambiguously expressed intent of Congress. They argue that when Congress provided in § 481(d) that intermediate level union elections could be conducted by "secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot," and then omitted the language concerning officers from § 481(a), Congress demonstrated that it did not intend for local officers to also be able to serve at the national and international conventions governed by § 481(a). Appellants then proceed to argue that, when Congress intended to recognize the power of the union to provide such *ex officio* voting status for its elected officers, Congress demonstrated in § 481(d) that "it knew how to do so and did so expressly." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 21, 100 S.Ct. 242, 248, 62 L.Ed.2d 146 (1979) (citations omitted); *see also NRDC v. EPA,* 822 F.2d 104, 129 (D.C.Cir.1987). Thus, appellants argue, when Congress provided that national and international elections could be conducted only "by secret ballot among the members ... or at a convention of delegates chosen by secret ballot," in § 481(a), this precluded the possibility of following a § 481(d) type procedure where properly elected local officers also serve as *ex officio* delegates.

While appellants' argument is a reasonable one, it simply proves too much. At least two other reasonable interpretations of the same statutes exist. A fair reading of § 481 could lead to the conclusion that the procedures set forth in § 481(d) are a subset of the selection allowed by § 481(a). That is, it is possible to read the Act to express the Congressional intent that § 481(a) contemplates the secret ballot election of convention delegates to occur by a universe of means including separate selection of delegates, selection of local officers as *ex officio* delegates, any mix of the two methods, or any other method the union might construct consistent with the requirement that the delegates be "chosen by secret ballot." The limiting language of § 481(d) would then serve to remove all possible methods except the ones specified from § 481(d) selection of electors at the intermediate level. A third alternative is the one selected by the DOL and embodied in 29 C.F.R. §§ 452.120, 452.123.[3] This third alternative construes the two provisions as representing mere alternate formulations of the same concept. It thus appears to us that rather than demonstrating a clear and unambiguous Congressional intent on this point, appellants' concededly reasonable interpretation of 29 U.S.C. § 481(a) & (d) simply underscores the very ambiguity, that is the existence of a multiplicity of possible interpretations, which permitted the Secretary to publish the questioned interpretive regulation, and which required the District Judge to properly move to the second phase of the *Chevron* analysis.

---

**3.** The text of the two regulations is as follows:

Officers as delegates.

Officers of labor organizations who have been elected by *secret* ballot vote of their respective memberships may, by virtue of their election to office, serve as delegates to conventions at which officers will be elected, if the constitution and bylaws of the labor organization so provide. In such cases it is advisable to have a statement to this effect included on the ballots. Persons who have been appointed to serve unexpired terms of officers who are ex officio delegates to a convention at which officers will be elected may not vote for officers in such election.
29 C.F.R. § 452.120 (1985).

Elections of intermediate body officers.

Section 401(d) states that officers of intermediate bodies shall be elected either by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot. The phrase "officers representative of such members" includes delegates who have been elected by secret ballot to represent labor organizations in intermediate bodies. Such delegates may therefore participate in the election of officers or intermediate bodies regardless of whether they are characterized as officers of the labor organization they represent.
29 C.F.R. § 452.123 (1985).

This second phase of *Chevron* was aptly summarized by Judge Pratt in his carefully reasoned opinion:

> Neither party has cited any legislative history specifically supporting any of these constructions, nor can we find any legislative history that would lead us to conclude that Congress unambiguously intended the Department of Labor and the courts to adopt one of the logically possible constructions of § 481(a), (d)
>
> . . . .
>
> ... [Therefore], the only question [for the court] is whether the agency's interpretation is reasonable.

*Theodus v. Brock*, No. 86–2467 at 9 (D.D.C. 1987) (unpublished) [available on WEST-LAW, 1987 WL 14599]. By all indicia of reasonableness, it is.

In the first place, the Agency's interpretation is not contrary to the purposes of the statutory scheme. While appellants argue cogently that a purpose of the scheme is the advancement of union democracy and that union democracy is better advanced by separately elected delegates shortly before an international convention than by *ex officio* delegates elected as local officers, perhaps years before the convention, this focuses the inquiry far too narrowly. Certainly, a policy of assuring "free and democratic" union elections underlies not only the sections disputed here, but also Title IV of the LMRDA as a whole. *See Wirtz v. Glass Bottle Blowers Ass'n*, 389 U.S. 463, 475, 88 S.Ct. 643, 650, 19 L.Ed.2d 705 (1968). Further, the idea of the selection of delegates immediately before the convening of the international body could advance that goal.[4] But Congress did not express an intent to take over all details of a union functioning within the general realm of democracy nor destroy the concept of union independence. Indeed, the Supreme Court has recognized a Congressional policy in construing the LMRDA to further free and democratic elections "with a minimum of interference in the internal affairs of unions." *Furniture Moving Drivers v.*

*Crowley*, 467 U.S. 526, 539, 104 S.Ct. 2557, 2564, 81 L.Ed.2d 457 (1984); *see also Dunlop v. Bachowski*, 421 U.S. 560, 568–69, 95 S.Ct. 1851, 1858, 44 L.Ed.2d 377 (1975); *Hodgson v. Local 6799, United Steelworkers*, 403 U.S. 333, 338–39, 91 S.Ct. 1841, 1845, 29 L.Ed.2d 510 (1971).

In accommodating these policies by its interpretation of the statute, the Secretary is not compelled to select any particular alternative, or even the "best" one. It is not our function, nor that of the District Court, to choose between policy considerations, as the " 'Constitution vests such responsibilities in the political branches.' " *Chevron*, 467 U.S. at 866, 104 S.Ct. at 2793 (quoting *TVA v. Hill*, 437 U.S. 153, 195, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978)). This the Secretary has done and we will not purport to second guess his policy decisions.

■ Appellants further contend that the Secretary's interpretation cannot be deemed a reasonable one because it lacked sufficient study and public input. We disagree. Whatever the early history of the letter opinions and the first codification of the interpretive rule, the District Court record before us demonstrates that the Secretary reconsidered the interpretive regulation in May of 1981 on petition of five individual members of the IBT. At that time the Department conducted the search for legislative history of the LMRDA and concluded that no clear answer was provided, and declined to overrule its prior interpretation. The record also reveals the undisputed fact that the DOL surveyed sixty-three unions and found that nearly half either required or permitted the use of *ex officio* delegates.[5] In short, we agree with the District Court that "the Agency considered the matter in a detailed and reasoned fashion." *Chevron*, 467 U.S. at 865, 104 S.Ct. at 2793 (footnote omitted).

We also find no merit in appellants' contention based on *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1220–22, 94

---

4. Both the Department and the District Court recognize TDU's proposal as a "worthy concept." *See Theodus v. Brock, supra,* at 11 & source cited therein.

5. *See Theodus v. Brock, supra,* at 12 and sources cited therein.

L.Ed.2d 434 (1987), that no deference is owed to the Agency on this purely legal question. In fact, where an agency is interpreting a statute entrusted to the agency's administration which is silent or ambiguous on the point at issue, *Chevron* applies and "we must defer to the [Agency's] interpretation if it is based upon a 'permissible' statutory construction." *NRDC, Inc. v. Thomas,* 838 F.2d 1224, 1236 (D.C.Cir.1988) (citations omitted). For the reasons demonstrated above, the Secretary's interpretation here is a reasonable one.

 Finally, although not essential to our decision, we are not unmindful of the fact that the DOL's policy, and the practices of unions consistent with that policy, have continued for twenty-five years. Such a long-standing substantially unchallenged interpretation, unmodified by Congress, would appear to at least indicate that the interpretation is not an arbitrary or capricious one or inconsistent with the will of the legislature. *Cf. National Association of Broadcasters v. FCC,* 740 F.2d 1190 (D.C.Cir.1984).

In sum, we perceive no merit in the appellants' assignments of error and affirm the judgment of the District Court.