Eric J. TALLEY

v.

Eric FELDMAN and The United Transportation Union.

No. 95–7955.

United States District Court, E.D. Pennsylvania.

Sept. 30, 1996.

As Amended Oct. 11, 1996.

502

Eric J. Talley, Philadelphia, PA, Pro Se.

Stephen J. Britt, U.S. Attorney's Office, Philadelphia, PA, James G. Sheehan, Assistant U.S. Attorney–Civil Division, Philadelphia, PA, for Eric Feldman.

G. Sander Davis, Davis and Myers, Philadelphia, PA,

Kevin C. Brodar, Cleveland, OH, for the United Transportation Union.

### MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court is the Motion of Defendant United Transportation Union to Dismiss Plaintiff's Action and the Motion of Defendant Eric Feldman to Dismiss Plaintiff's Action, or in the Alternative, for Summary Judgment. For the reasons set forth below, this Court will dismiss the plaintiff's claims against the defendants.

### I. BACKGROUND

The plaintiff, Eric J. Talley, a member in good standing of Local 61 of the United Transportation Union ("UTU"), alleges that there were improprieties with UTU's January 19, 1996 Section 401(d) elections.[1] Specifically, the plaintiff alleges that UTU failed to provide timely nomination and election notices during its 1995 nationwide quadrennial elections of officers for General Committee of Adjustment GO–769.[2] Furthermore, the plaintiff maintains that UTU did not permit him or other members to nominate candidates in those elections, become candidates themselves, or support and vote for candidates of their choice. These actions, the plaintiff asserts, violate the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), the Railway Labor Act ("RLA"), and the United States Constitution.

On May 5, 1996, following the elections, the plaintiff filed a formal complaint with the Department of Labor ("Department") and

---

1. This election is authorized under § 401(d) of LMRDA. 29 U.S.C. § 481(d) (1985).

2. GO–769 is an intermediate labor organization of UTU.

outlined his allegations of defendant UTU's misconduct. The Department conducted an investigation, and on September 5, 1995, the plaintiff received a letter from defendant Eric Feldman[3] stating the reasons why the Secretary of Labor ("Secretary") would not file suit under the LMRDA to set aside UTU's 1995 election.

After receiving Mr. Feldman's letter, the plaintiff filed the instant suit against defendants UTU and Feldman[4], alleging violations of his rights under the LMRDA, the RLA, and the First and Fifth Amendments of the United States Constitution. The plaintiff requests this Court to: (1) declare the action of the Department contrary to law, arbitrary, capricious and in defiance of LMRDA; (2) order the Department to institute suit to set aside UTU's Section 401(d) elections for its officers; and (3) award the plaintiff $700,000 in damages to be paid by the defendants. The defendants, on the other hand, argue that the plaintiff's claims lack merit, and have moved this Court to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. DISCUSSION

### A. Legal Standard

#### 1. Rule 12(b)(1)—Subject Matter Jurisdiction

Upon reviewing a motion to dismiss for lack of subject matter jurisdiction, courts apply a different standard than when reviewing a motion to dismiss for failure to state a claim. Thus, in *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884 (3d Cir.1977), the United States Court of Appeals for the Third Circuit stated:

Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* at 891.

▮▮▮▮ Pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court can grant a dismissal based on the legal insufficiency of a claim. Dismissal is proper only when the claim clearly appears to be either immaterial and solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). When the subject matter jurisdiction of the court is challenged, the party that invokes the court's jurisdiction bears the burden of persuasion. *Kehr Packages,* 926 F.2d at 1409 (citing *Mortensen,* 549 F.2d 884, 891 (3d Cir.1977)). Moreover, the district court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988) (citations omitted), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989).

#### 2. Rule 12(b)(6)—Claims Upon Which Relief May Be Granted

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint set forth "a

---

3. Mr. Feldman is the Regional Director of the Philadelphia Regional Office of the Office of Labor–Management Standards, United States Department of Labor.

4. The plaintiff sues defendant Feldman individually and in his official capacity as Regional Director of the Philadelphia Regional Office of the Office of Labor–Management Standards and as the representative of the Secretary of Labor. In his pleadings and briefs to this court, however, he treats Mr. Feldman as the Secretary, who has authority to initiate legal action. In his affidavit, Mr. Feldman states that he lacks the authority to initiate suits on behalf of union members under LMRDA. (Feldman Aff. at ¶ 4). Because lawsuits under LMRDA are usually brought against the Secretary, who has the authority to initiate legal action to set aside an election, this Court will substitute Robert Reich, the Secretary of Labor, for defendant Feldman. Moreover, because the plaintiff does not plead a *Biven's* action against Defendant Feldman, this Court will only allow the plaintiff to sue Mr. Reich in his official capacity as Secretary of Labor.

short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a)(2). Accordingly, the plaintiff does not have to "set out *in detail* the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (emphasis added). In other words, the plaintiff need only to "give the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (emphasis added).

In deciding a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, this Court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them. Dismissal under Rule 12(b)(6) ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988)); *see H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). The court will only dismiss the complaint if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc.*, 492 U.S. at 249–50, 109 S.Ct. at 2905–06 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

## B. *Analysis of Plaintiff's Claims*

### 1. *Labor Management Reporting and Disclosure Act*

#### a. *Claims Against Defendant UTU*

The plaintiff alleges that defendant UTU's 1995 election violated provisions of LMRDA. He believes that "Article 82 [of UTU's constitution] unlawfully *discriminates* against rank and file members in their rights to vote, nominate, speak and assemble at Article 82 election meetings." [5] (Pl.'s Resp. to UTU

Mot. at 7) (original emphasis). Accordingly, he brings suit against the defendant UTU under Title I, which provides him a private cause of action. Defendant UTU argues that the plaintiff's suit is brought not under Title I, but under Title IV, and the court must dismiss the claim, because it lacks subject matter jurisdiction.

LMRDA "was Congress' first major attempt to regulate the internal affairs of labor unions." *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 528, 104 S.Ct. 2557, 2559, 81 L.Ed.2d 457 (1984). Title I of LMRDA, 29 U.S.C. §§ 411–415, provides a statutory "Bill of Rights" for the "rank and file" union members. *Id.* Title I was "designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id.* at 536–37, 104 S.Ct. at 2563–64. To protect these rights, Title I allows an individual union member to initiate a civil action during a union election. 29 U.S.C. § 412 (1985).

Title IV, 29 U.S.C. §§ 481–483, on the other hand, "provides an elaborate post[-]election procedure aimed solely at protecting union democracy through free and democratic elections, with primary responsibility for enforcement lodged with the Secretary of Labor." *Crowley*, 467 U.S. at 536, 104 S.Ct. at 2563. Title IV requires that a plaintiff alleging a violation, exhaust the remedies available under his union's constitution and bylaws. 29 U.S.C. § 482(a)(1) (1985). After exhausting these internal remedies, the plaintiff may file a complaint with the Secretary of Labor, who will investigate the plaintiff's allegations. 29 U.S.C. § 482(b) (1985); *see McDonough v. Local 825, Int'l Union of Operating Eng'rs*, 470 F.2d 261, 264 (3d Cir. 1972) ("The purpose of this intricate procedure is to permit a 'maximum amount of

---

5. Article 82 requires that the "officers of a General Committee shall be elected by secret vote of the members of the General Committee during the quadrennial meeting...." The members of the General Committee are "the Chairperson(s) of each Local Committee of Adjustment under the jurisdiction of the General Committee of Adjustment...." Under Article 57 of the UTU constitution, offices of the Local Committees of Adjustment, including Local Committee Chairpersons, are elected every four years by secret ballot vote of members of UTU Locals.
(Secretary's Statement of Reasons at 1–2.)

independence and self-government by giving every international union the opportunity to correct improper local elections.'") (quoting S.Rep. No. 187, 86th Cong., 1st Sess. 21 (1959)). If the Secretary,

> finds probable cause to believe that a violation ... has occurred and has not been remedied, he shall ... bring a civil action against the labor organization as an entity in the district court of the United States ... to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers....

*Id.* If, however, the Secretary decides not to bring civil action, a union member may not initiate a private suit against the union. *Crowley,* 467 U.S. at 549, 104 S.Ct. at 2570 (citing *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 531, 92 S.Ct. 630, 632–33, 30 L.Ed.2d 686 (1972)); *McDonough,* 470 F.2d at 264 (citing 29 U.S.C. § 483). The remedy provided by Title IV for challenging an election already conducted is exclusive, and thus preempts any Title I claims. 29 U.S.C. § 483 (1985); *Crowley,* 467 U.S. at 549; *McDonough,* 470 F.2d at 264. Therefore, when a district court determines that a plaintiff's Title I suit is really a Title IV suit, the court must dismiss the private civil action for lack of subject matter jurisdiction. *McDonough,* 470 F.2d at 265; *Thompson v. United Transportation Union,* C.A. No. 89–2318, 1991 WL 325552, at *5 (N.D.Ohio May 9, 1991); *Gammon v. International Ass'n of Machinists,* 199 F.Supp. 433, 435 (N.D.Ga. 1961).

■ In this case, the plaintiff filed a complaint with the Department, after exhausting his internal remedies. In his complaint to the Department, the plaintiff requested that the Secretary set aside the defendant UTU's January 19, 1995 election. (Pl.Compl. to Department at 1). This complaint was filed on May 5, 1995, almost four months after the election on which the plaintiff based his claims. Therefore, this Court concludes that the plaintiff seeks post-election relief against

defendant UTU. Because he proceeds under Title IV, rather than Title I, he cannot maintain a suit against defendant UTU.

The plaintiff admits as much, by citing *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984), which held that Title IV's exclusivity provisions preempt Title I claims. (Pl.'s Resp. to UTU Mot. at 5–6) (citing *Crowley,* 467 U.S. at 550, 104 S.Ct. at 2570–71). The plaintiff attempts to circumvent this fact by arguing that "this Court can grant 'appropriate relief under Title I' here, without ever touching the already conducted elections, [by declaring] Article 82 void under 29 U.S.C. § 411(b)." (Pl.'s Resp. to UTU Mot. at 6). He supports his argument by relying on *Crowley*'s dicta, which states that "[f]or less intrusive remedies sought [during a post-election era] a district court retains authority to order appropriate relief under Title I." (Pl.'s Resp. to UTU Mot. at 6 (quoting *Crowley,* 467 U.S. at 550, 104 S.Ct. at 2570–71)). This conclusion is incorrect, because the *Crowley* dicta applies not to post-election relief, but to on-going elections.[6] By misquoting the Supreme Court, the plaintiff attempts to create a cause of action which circumvents Congress' statutory scheme. This Court must reject this argument.

Consequently, this Court is without jurisdiction over the subject matter of this action, because a specific administrative remedy for determining the validity of UTU's election exists under LMRDA. Accordingly, the claims against defendant UTU are dismissed under Federal Rule of Civil Procedure 12(b)(1).

### b. *Claims Against the Secretary*

As set forth above, under the LMRDA, the Secretary must decide whether to initiate a suit against a union. 29 U.S.C. § 482(b). If the Secretary determines that a union violated the LMRDA, he may initiate a suit on behalf of the complaining union members.

---

**6.** The dicta from *Crowley* should read as follows: "For less intrusive remedies sought *during an election, however,* a district court retains authority to order appropriate relief under Title I." *Crowley,* 467 U.S. at 550, 104 S.Ct. at 2570–71 (emphasis added). *See Crowley,* 467 U.S. at 550, 104 S.Ct. at 2570–71.

29 U.S.C. § 483 (1985). This is the exclusive remedy available to a union member.

The Secretary's decision not to sue does not mean that a union member has no recourse under the law. This decision is subject to limited review by the district court.[7] *Crowley,* 467 U.S. at 549 n. 22, 104 S.Ct. at 2570 n. 22 (citing *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975)). The district court must review "the Secretary's disposition of a union member's complaint ... under the 'arbitrary and capricious' standard of section 706(2)(A) of the Administrative Procedure Act ('APA'), 5 U.S.C. § 706(2)(A)." *Doyle v. Brock,* 632 F.Supp. 256, 258 (D.D.C.1986) (citing *Bachowski,* 421 U.S. at 560, 95 S.Ct. at 1851). The district court's review,

> should be confined to examination of the "reasons" statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election.

*Bachowski,* 421 U.S. at 572–73, 95 S.Ct. at 1860. Therefore, if the district court "determines that the Secretary's statement of reasons adequately demonstrates that his decision not to sue is not contrary to the law, the complaining union member's suit fails and should be dismissed." *Id.* at 574, 95 S.Ct. at 1861.

In this case, the plaintiff alleges that the Secretary's statement of reasons is arbitrary and capricious, because the Secretary's interpretation of the LMRDA is contrary to the plain language of the statute and the intent of Congress. The Secretary disagrees and argues that his interpretation is reasonable in light of the statute's legislative history. To resolve this dispute, the Court will analyze each claim presented in the plaintiff's May 5, 1995 complaint to the Department. The Court will then determine whether the

Secretary's reasons not to sue are contrary to the law or the will of Congress.

### 1. Count I

In his first count, the plaintiff alleges that defendant UTU "violated his and the members' organizational rights guaranteed by the RLA." (Compl. to Department at ¶ 6). The Secretary, however, dismissed this count, noting that "[t]he RLA does not govern elections of union officers, and the Department of Labor does not enforce the RLA." (Secretary's Statement of Reasons at 1 n. 1).

Congress intended that the RLA and the LMRDA govern different aspects of labor-management relations. Congress enacted the RLA to regulate labor-management relations and collective bargaining in the railroad industry, and the LMRDA to govern the election of union officials by union members. *See* 29 U.S.C. § 401 (1985) (stating purpose of LMRDA); 45 U.S.C. § 151(a) (1986) (stating purpose of RLA). To achieve these ends, Congress designated different agencies to mediate disputes under each statute. RLA disputes are resolved by the National Mediation Board, while LMRDA disputes are resolved by the Department. *See Crowley,* 467 U.S. at 568, 104 S.Ct. at 2582 (LMRDA); *Switchmen's Union of N. Am. v. National Mediation Bd.,* 320 U.S. 297, 301, 64 S.Ct. 95, 97, 88 L.Ed. 61 (1943) (RLA).

Here the plaintiff alleges violations concerning the election of union officials by union members. Thus, the LMRDA applies, and not the RLA. Accordingly, this Court finds that the Secretary's decision not to initiate suit for alleged RLA violations set forth in Count I is not contrary to the law, and thus not arbitrary and capricious.

### 2. Count II

The plaintiff also alleges that UTU's method for electing General Committee of Adjustment officers by secret ballot, set forth in Article 82 of its constitution, is contrary to the balloting procedures required by the LMRDA. (Compl. to Department at ¶ 7).

---

7. In private actions against the Secretary, the district courts have original jurisdiction pursuant to 28 U.S.C. § 1337(a).

The plaintiff argues that Article 82's non-conformities violate the LMRDA, because:

a. Section 401(d) provides and guarantees all union members in good standing the right to elect by secret ballot general committee of adjustment officials. *See* 29 U.S.C.A. § 482(d);

b. [S]ection 402(e) provides and guarantees all union members the right to be eligible for and to hold office in general committee of adjustments, subject to reasonable qualifications. *See* 29 U.S.C.A. § 482(e); and

c. [S]ection 402(c) provides and guarantees nominees or candidates for general committee of adjustment offices to campaign for these offices free from a labor organization's discriminating interference. It also requires the labor organization to provide and guarantee safeguards which will promote a fair and democratic general committee of adjustment election.

(Compl. to Department at ¶¶ 7(a)–(c)).

The Secretary rejected these counts, and presented a detailed, reasoned basis for his decision not to sue. In his statement, the Secretary determined that:

The method of election used to elect officers of GO–769 is consistent with the requirement of Section 401(d) of the LMRDA that intermediate body officers be elected "by secret ballot among members in good standing or by labor organization officers representative of such members who have been elected by secret ballot." The Department's interpretative regulations recognize that "[t]he phrase 'officers representative of such members' includes delegates who have been elected by secret ballot to represent labor organizations in intermediate bodies. Such delegates may therefore participate in the election of officers characterized as officers of the labor organization they represent." 20 C.F.R. § 452.123. Similarly, 29 C.F.R. § 452.124 expressly recognizes that the chairperson of a local committee that is not itself a labor organization may vote for officers of an intermediate labor organization, if he or she has been elected by secret ballot vote. *See also* 29 C.F.R. § 452.22 (delegates who elect intermediate body officers must be elected by secret ballot, even if they are not "officers" of the labor organization) and 29 C.F.R. § 452.27 (officers of an intermediate body may be elected by person acting in a representative capacity who have been elected by secret ballot).

Although Section 401(a) of the LMRDA, 29 U.S.C. § 481(a), states that International and National officers may be elected by "*delegates* chosen by secret ballot" and 401(d) states that intermediate body officers may be elected by "*officers* ... elected by secret ballot," (emphasis added) the Department has interpreted these provisions as having the same meaning. The Department of Labor's interpretation, as reflected in the interpretative regulations, was adopted in 1960, the year after enactment of the LMRDA, and has been followed consistently since then. It was recognized as a reasonable interpretation of the LMRDA in *Theodus v. McLaughlin*, 852 F.2d 1380 (D.C.Cir.1988) (Construction of 401(a) and 401(d) as alternative formulations of the same concept is reasonable: local union officers may serve as "ex-officio" delegates in the election of international union officers).

(Secretary's Statement of Reasons at 2–3). To determine whether this decision is reasonable under the LMRDA, this Court must analyze the Department's interpretation of Section 401(d) in light of its text and legislative history.

 When reviewing an agency's interpretation of a statute, a court must give effect to Congress' intent, if that intent is clear. *OWCP v. Eastern Associated Coal Corp.*, 54 F.3d 141, 147 (3d Cir.1995) (citing *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). If, however, the intent is not clear or Congress was silent on its intent, a court must defer to the Agency's regulation, if it reasonably construes the statute. *Id.* To determine whether the agency's regulation comports with Congress' will, a court must:

[L]ook to see whether the regulation harmonizes with the plain language of the

statute, its origin, and its purpose.... So long as the regulation bears a fair relationship to the language of the statute, reflects the views of those who sought its enactment, and matches the purpose they articulated, it will merit deference.

*Id.* (quoting *Sekula v. FDIC*, 39 F.3d 448, 452 (3d Cir.1994)).

■ This Court begins its analysis by focusing on the language of Title IV of the LMRDA itself. Section 401 provides that:

Officers of intermediate bodies, such as general committees ... shall be elected not less often than once every four years by secret ballot among the members in good standing or by *labor organization officers representative of such members* who have been elected by secret ballot.

29 U.S.C. § 481(d) (1985) (emphasis added). Although the term "officer" is defined in the definition section of the statute,[8] the term "officers representative of such members" is not defined. Furthermore, inserting the definition of "officer" into the term "officers representative of such members" is unhelpful, and contrary to the Supreme Court's express instructions not to read the LMRDA literally. *See Crowley*, 467 U.S. at 541, 104 S.Ct. at 2566 ("[W]e have previously 'cautioned against a literal reading' of the LMRDA.'") (quoting *Wirtz v. Glass Bottle Blowers Ass'n*, 389 U.S. 463, 468, 88 S.Ct. 643, 646, 19 L.Ed.2d 705 (1968)). Therefore, it is unclear from a plain reading of the statute, whether "officers representative of such members" includes delegates who have been elected by secret ballot to represent the intermediate bodies of labor organizations.

■ Accordingly, this Court turns next to the legislative history of the LMRDA to ascertain Congress' intent. At first blush, the legislative history appears as helpful as the plain language of the statute. An analysis of the reports accompanying the pre-passage versions of the LMRDA bill shed little light on resolving the interpretation in the instant dispute.[9] For example, the Senate Report indicates that the bill did not contain a definition of the term "officer" under Section 401(d).[10] *See* S.Rep. No. 187, 86th Cong., 1st Sess. (1959), *reprinted in* 1959 U.S.C.C.A.N. 2318, 2336. Although the bill accompanying the House Report included a definition of the term "officer," the Report itself does not resolve the instant dispute. *See* H.Rep. No. 741, 86th Cong., 1st Sess. (1959), *reprinted in* 1959 U.S.C.C.A.N. 2424, 2451. Furthermore, the Conference Report does not even address the issue of "officer" in the context of Section 401(d). *See* Conf.Rep. No. 1147, 86th Cong.,

8. "Officer, agent, shop steward, or other representative", when used with respect to a labor organization, includes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried nonsupervisory professional staff, stenographic, and service personnel.
29 U.S.C. § 402(q) (1985).

9. This is not surprising, given the fact, that this complex statute was the result of many legislative compromises. *See Crowley*, 467 U.S. at 541–42, 104 S.Ct. at 2566 (citations omitted). Moreover, Archibald Cox, who actively participated in shaping much of the LMRDA, has remarked: The legislation contains more than its share of problems for judicial interpretation because much of the bill was written on the floor of the Senate or House of Representatives and because many sections contain calculated ambiguities or political compromises essential to secure a majority. Consequently, in resolving them the courts would be well advised to seek out the underlying ratio-

nale without placing great emphasis upon close construction of the words.
*Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 468 n. 6, 88 S.Ct. 643, 646 n. 6, 19 L.Ed.2d 705 (1968) (quoting Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 *Mich.L.Rev.* 819, 852 (1960)).

10. The plaintiff cites the following language from the Senate Report, and argues that this passage resolves the dispute:

The bill recognizes that in some unions intermediate bodies exercise responsible governing power and specifies that the members of such bodies as systems boards in the railroad industry be elected by secret ballot of the members of the union or union officers elected by embers by a secret ballot.
(Pl.Resp. to UTU Mot. at 12) (citing S.Rep. No. 187, 86th Cong., 1st Sess. (1959), *reprinted in* 1959 U.S.C.C.A.N. 2318, 2336.) He argues that this passage clearly demonstrates congressional intent with respect to Section 401(d). This argument must be rejected, however, because this passage refers to Congress' explanation of Section 301(c) of the statute, and not Section 401(d).

**510**

1st Sess. (1959), *reprinted in* 1959 U.S.C.C.A.N. 2503.

It is only when the Court examines the section-by-section analysis of the LMRDA by the Senate Subcommittee on Labor of the Committee on Labor and Public Welfare that Congress' intent comes into focus. In that report, the Senate subcommittee examined the final post-passage version of the LMRDA, and explained that Section 401(d) requires,

> that officers of intermediate union bodies, such as general committees, systems boards, joint boards, joint councils, or other association of unions as defined in the bill, are to be elected at least every 4 years by secret ballot among the members in good standing *or by officers or representatives elected by secret ballot and in accordance with the union's constitution and bylaws.*

Senate Subcomm. on Labor of Comm. on Labor and Public Welfare, 86th Cong., 1st Sess. (1959), Section-by-Section Analysis of the Labor–Management Reporting and Disclosure Act of 1959, *reprinted in* National Labor Relations Board, I *Legislative History of the Labor–Management Reporting & Disclosure Act of 1959* 12 (1959) (emphasis added). This passage lends credence to the Secretary's assertion that the LMRDA may be interpreted to allow properly elected delegates to elect intermediate body officers.[11]

The plaintiff dismisses this interpretation and argues that the only possible interpretation of Section 401(d) is a plain reading of the provision, which allows the "rank and file" members of the union to directly elect intermediate board officers. This Court must reject this narrow view, given the legislative history of the LMRDA and the Supreme Court's mandate not to read the statute literally. Moreover, several courts have found that various provisions of Section 401(d) of the LMRDA are subject to multiple interpretations. *See, e.g., Theodus v. McLaughlin,* 852 F.2d 1380, 1386–87 (D.C.Cir.1988) (recog-

nizing three possible interpretations of another representation process under Section 401(d)). Therefore, there is no reason to believe that the provision of Section 401 in dispute in this case is subject to only one interpretation.

Consequently, this Court finds that the Secretary's reliance on its regulations which allow UTU's local chairpersons to elect GO–769 officers, is a reasonable interpretation of Section 401(d). Therefore, the Secretary's interpretation of the LMRDA are not inconsistent with congressional intent. Accordingly, this Court finds that the Secretary's decision not to initiate suit for the violations alleged in Count II is not contrary to the law, and thus not arbitrary and capricious.

### 3. *Count III*

■ The plaintiff alleges that UTU's election practices were designed "to keep the incumbents in office and to maintain company unions by denying the union membership in toto the right to self-organization, self-government and self-determination." (Compl. to Department at ¶ 8). Moreover, the plaintiff contends that "[t]he UTU, since the enactment of the LMRDA, has never allowed the union membership to elect general committee officials to office." *Id.* In other words, by adhering to the requirements of Article 82 of its constitution, defendant UTU has prevented its members from nominating or supporting GO–769 candidates—a violation of the LMRDA.

The Secretary found that these allegations were not substantiated, and set forth his reasons for not initiating a suit under on this count:

> First, by voting for local Chairperson the members were able to participate in the GO–769 officer election by virtue of their representation by the local Chairpersons in the intermediate body election. This is the very essence of an indirect election of officers by representatives and, as discussed

11. This interpretation is consistent with the Secretary's regulation which states that:
> The phrase "officers representative of such members" includes delegates who have been elected by secret ballot to represent labor organizations in intermediate bodies. Such dele-

gates may therefore participate in the election of officers of intermediate bodies regardless of whether they are characterized as officers of the labor organization they represent.
29 C.F.R. § 452.123 (1995).

above, under the LMRDA such indirect elections are permitted for international, national, and intermediate labor organizations. Second, individual members were free to support candidates for GO–769 office: nothing in the UTU Constitution prevents such support, and there was no evidence of any action taken by UTU to prevent members from supporting candidates of their choice. Third, any member in good standing of a Local affiliated with GO–769 could nominate candidates of, and be nominated as, a local Chairperson, and thus become eligible for GO–769 office. Thus, the nominations procedures could be construed as violating the LMRDA, there was no evidence that any member who sought office in GO–769 was denied the opportunity to be nominated for office. Nor was the complainant prevented from seeking office. The complainant admitted that he could have run for office, but was not interested in becoming an officer on the Local Committee of Adjustment. He claimed to have an interest in the position of General Chairman, which he or any other member holding seniority in the craft represented by the General Committee could run for, but made no attempt to be nominated for that position.

(Secretary's Statement of Reasons at 3).

As set forth above, 401(d) permits intermediate bodies to elect officers by secret ballot vote of all its members or by labor organization officers representative of such members who have been elected by secret ballot. 29 U.S.C. § 481(d). Under Title IV's statutory scheme, if the members vote directly for intermediate body officers, the election is governed by Section 401(e).[12] On the other hand, if union members' representatives vote

for the officers, the election is governed by Section 401(f).[13] The election of these representatives, however, must be conducted by secret ballot, pursuant to the requirements of Section 401(e).

An examination of Article 82 indicates that UTU's constitution comports with the requirements of Title IV of the LMRDA. Article 82 allows all union members to vote for representatives to elect GO–769 members. By requiring the initial election to be conducted by secret ballot, defendant UTU complies with the requirements of Sections 401(e) and 401(f). Furthermore, the Secretary did not find any deviations with this procedure during the January 19, 1995 election. The Secretary also correctly determined that defendant UTU's constitution does not deny anyone the opportunity to be nominated for office. Moreover, he found no evidence to support the plaintiff's allegations that he and other members were personally denied this opportunity.[14]

Accordingly, this Court finds that the Secretary's decision not to initiate suit for the violations alleged in Count III is not contrary to the law, and thus not arbitrary and capricious.

### 2. Railway Labor Act

The plaintiff challenges defendant UTU's election procedures, arguing that the union's constitution violates the RLA. He asserts that Article 82 of the constitution requires candidates to be employees, and permits a candidate receiving less than the majority of the votes to win an election. (Compl. at ¶ 20). These requirements, he

12. Section 401(e) provides in relevant part that: In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and hold office ... and shall have the right to vote for or otherwise support the candidate or candidates of his choice.... The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter. 29 U.S.C. § 481(e) (1985).

13. Section 401(f) provides in relevant part that, "[w]hen officers are chosen by a convention of delegates elected by secret ballot, the convention shall be conducted in accordance with the constitution and bylaws of the labor organization insofar as they are not inconsistent with the provisions of this subchapter." 29 U.S.C. § 481(f) (1985).

14. Because the Secretary's decision is subject to limited review, this Court will not question the Secretary's factual findings. See Bachowski, 421 U.S. at 573, 95 S.Ct. at 1860–61.

# 512

argues, are contrary to Section 2, Third and Fourth of the RLA.

Section 2, Third of the RLA provides that elected employee representatives are not required to be employees of the carrier. 45 U.S.C. § 152 Third (1986). Furthermore, Section 2, Fourth of the RLA requires that the majority of the employees elect the employee representatives. 45 U.S.C. § 152 Fourth (1986). These provisions, however, are not contrary to UTU's constitution, because the RLA does not govern the election of union officers by members of a union. Instead, as noted above, the statute regulates labor-management relations in the railroad industry and addresses the selection of collective bargaining representatives and the right to organize and bargain collectively without interference.

In this case, this Court, without turning to the merits of the plaintiff's claims, finds that the plaintiff does not have a cause of action against defendant UTU under the RLA. The plaintiff's claims are based on the January 19, 1995 election of union officers, and do not involve disputes over collective bargaining.[15] Furthermore, the Secretary clearly states that "[t]he RLA does not govern elections of union officers, and the Department of Labor does not enforce the RLA." (Secretary's Statement of Reasons at 1 n. 1).

Accordingly, this Court must dismiss the RLA claims against defendant UTU. Moreover, this Court finds that the Secretary's decision not to initiate suit for violations of the RLA was not arbitrary or capricious.

### 3. *Constitutional Claims*

The plaintiff alleges that Article 82 of UTU's constitution unlawfully eliminates ninety-nine percent of the union members from becoming eligible for GO–769 office, and from actively participating in nominating, voting for and electing candidates to GO–769 offices. (Compl. at ¶ 21). By limiting the candidates and those who can vote, the plaintiff contends that UTU violated his

First and Fifth Amendment rights. (Compl. at ¶ 21). The defendants, on the other hand, argue that because UTU is not a state actor, the constitutional amendments do not apply, and the Secretary properly rejected the plaintiff's claims.

■■■ It is well settled that the First and Fifth Amendment of the Constitution "apply to and restrict only the Federal Government and not private persons." *Public Utilities Comm'n of D.C. v. Pollak,* 343 U.S. 451, 461–62, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952) (citing cases). Furthermore, "[l]abor unions have been traditionally regarded as private entities, despite the imposition of regulatory provisions upon them." *Driscoll v. International Union of Operating Eng'rs, Local 139,* 484 F.2d 682, 690 n. 21 (7th Cir.1973) (citations omitted), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974). Therefore, a labor union may not be sued for constitutional violations. If, however, a plaintiff demonstrates that the government significantly encouraged the labor union to engage in the constitutional violations, he may be able to maintain a suit against the union under the First and Fifth Amendments. *Id.*

■■■ In this case, the plaintiff admits that defendant UTU "is not a state actor under the United States Constitution." (Pl.'s Resp. to UTU Mot. at 3). By admitting this, the plaintiff concedes that he may not sue defendant UTU under the First and Fifth Amendments. The plaintiff tries to circumvent this fact by asserting that defendant UTU and the Secretary acted in concert under federal law to deprive him "of his legal right to self organize his union." (Pl.'s Resp. to UTU Mot. at 3–4). He does not, however, elaborate how his Fifth Amendment associational rights or his First Amendment free speech rights are affected by the federal laws that defendant UTU and the Secretary used. Moreover, he does not explain how these laws denied him substantive or procedural due process rights, or any rights under the

---

**15.** The plaintiff tries to overcome this hurdle by alleging that Article 82, "is the Union's antidemocratic entrenching device, specifically designed to entrench corrupt union officials in office and to prohibit illegally the union members from self-

organizing to advance their legitimate collective bargaining interests." (Compl. at ¶ 22.2). This argument, however, is not supported by the pleadings or by the law.

Fifth Amendment. In other words, the plaintiff fails to demonstrate that the Secretary significantly encouraged defendant UTU to violate either his First and Fifth Amendment rights. Consequently, the plaintiff cannot maintain a cause of action against defendant UTU.[16]

### III. CONCLUSION

For the reasons set forth above, this Court dismisses the plaintiff's RLA. and constitutional claims against defendant UTU, pursuant to Federal Rule of Civil Procedure 12(b)(6), and the LMRDA claim against defendant UTU, pursuant to Federal Rule of Civil Procedure 12(b)(1). This Court also dismisses all of the plaintiff's claims against the Secretary pursuant to Rule 12(b)(6).

An appropriate Order follows.

### ORDER

AND NOW, this 30th day of September, 1996, upon consideration of the Motion of Defendant United Transportation Union to Dismiss Plaintiff's Action and the Motion of Defendant Eric Feldman to Dismiss Plaintiff's Action, or in the Alternative, for Summary Judgment, IT IS HEREBY ORDERED that the Court will substitute Robert Reich, Secretary of Labor for Defendant Eric J. Feldman.

IT IS FURTHER ORDERED that:

(1) Plaintiff's claims against Defendant United Transportation Union are **DISMISSED**;

(2) Plaintiff's claims against Defendant Robert Reich are **DISMISSED**; and

(3) the Clerk of the Court shall mark this case closed.

16. In his complaint to Department, the plaintiff does not explicitly allege violations of the First and Fifth Amendments. Consequently, the Secretary's Statement of Reasons does not address the constitutional issues. Therefore, it is unnecessary to evaluate whether the Secretary's decision not to initiate suit for the alleged constitutional violations was arbitrary and capricious.